UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMIE PETTIT,

   Plaintiff,

  v.

PROCTER & GAMBLE COMPANY,

   Defendant.

Case No. 15-cv-02150-RS

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

Defendant Proctor & Gamble Company ("P&G") sells "Charmin Freshmates"—pre-moistened disposable cloths that can be used for multiple purposes including personal hygiene and cleaning. Freshmates are marketed and labeled as "flushable." Plaintiff Jamie Pettit brings this putative class action under California law, contending that use of the term "flushable" is false and misleading under the "reasonable consumer standard," because Freshmates allegedly are *not* "flushable" in the sense that a significant portion of consumers would expect. Pettit alleges that while Freshmates may be "flushable" in that they generally will pass through toilets, they actually are not suitable for disposal through municipal waste systems and may even cause clogs and damage within consumers' own plumbing systems.

Pettit now seeks class certification. The central thrust of P&G's opposition to certification is its insistence that Pettit cannot show consumers have a uniform understanding of the meaning of "flushable"—much less the understanding on which Pettit's claims depend.

Although P&G acknowledges in passing that the reasonable consumer standard is an objective inquiry, its argument largely ignores that point. Pettit has no burden to show the actual understanding of all consumers, or of any particular percentage of consumers, or that there was a uniform, class-wide understanding. Rather, to prevail at trial, Pettit must establish "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 129 Cal.Rptr.2d 486, 495 (2003). Because that question—whether a significant portion of the public or targeted consumers acting reasonably could be misled—plainly is capable of resolution on a class-wide basis, much of P&G's opposition to certification is misdirected. As Pettit has otherwise made an adequate showing that the prerequisites of Rule 23 have been satisfied, the motion for class certification will be granted.

## II. BACKGROUND

As noted, Freshmates are disposable, pre-moistened cleaning wipes, and are sold at retailers in packaging which identifies them as "flushable." Pettit purchased Freshmates in 2014, apparently under the impression that "flushable" meant "[t]hat it goes down the toilet . . . [and t]hat it was safe for the sewer system." Lannin Decl., Ex. A 79-82. Later, the wipes began clogging her toilet, and she learned wipes like Freshmates have "damaged home plumbing systems and wastewater treatment facilities in municipalities all over the country." Compl. ¶ 77. Pettit alleges P&G charges a premium for wipes labeled "flushable," as opposed to similar wipes not bearing that label. She now says that "[h]ad she known of the risk of clogging, as well as the expensive plumbing repairs and damage that the wipes cause, [she] would not have purchased the [Freshmates], or at a minimum, would not have paid a premium for them." *Id.*

Arguing the "flushable" label is false and enables P&G improperly to secure a price premium on Freshmates sales, Pettit brought these claims for: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; violation of the California

Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; common law negligent misrepresentation; and common law fraud, deceit and/or misrepresentation. According to Pettit, she and the putative class members were wrongly charged a premium for "flushable" wipes that are not actually suitable for flushing, and are therefore entitled to restitution and/or injunctive relief. Pettit seeks certification of a class consisting of "[a]ll persons who, between April 6, 2011 and the [date of class certification], purchased in California the Charmin Freshmates Flushable Wipes (excluding purchases for purpose of resale)."

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 23 allows for the certification of a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).[1] If these prerequisites are satisfied, a class action may be maintained if, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), or "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis," that the requirements of Rules 23(a) and (b) have been satisfied. *See Comcast Corp. v. Behrend*, 133

---

[1] Rule 23 does not require "a class proponent [to] proffer an administratively feasible way to identify class members." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4, 1126 (9th Cir. 2017). P&G acknowledges this is the governing rule in this circuit, but seeks to preserve its right to argue the class is not ascertainable, should the law change or continue to evolve in this area.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION
CASE NO. 15-cv-02150-RS
3

S. Ct. 1426, 1432 (2013) (citations and internal quotation marks omitted). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Id*.

## IV. DISCUSSION

### A. Numerosity

The proposed class is sufficiently numerous that joinder would be impracticable, as millions of packages of Freshmates have been sold in California during the class period. P&G does not argue otherwise.

### B. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that the class claims depend on "a common contention . . . of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 (2011) (citations and internal quotation marks omitted). Pettit argues the class claims are primarily driven by the common question: Was the "flushable" label P&G affixed to Freshmates false?

P&G vigorously disputes this assertion, advancing three basic reasons why, in its view, this proffered common question is not actually common to the class. P&G contends: (1) Pettit has not demonstrated that class members share a common understanding of "flushable"; (2) Pettit's evidence of falsity as to "flushable" is not responsive to class members' understanding of the term; (3) Pettit cannot show with common evidence that the "flushable" nature of Freshmates was material to class members when purchasing.

The second of P&G's arguments is easily dispatched. Pettit produces evidence that Freshmates are not suitable for sewers, wastewater systems, and the environment — evidence from which it can be resolved whether the "flushable" label is false according to Pettit's theory— which is that Freshmates are not "flushable" because they are not safe for sewers, wastewater systems, and the environment. Pettit has produced common evidence to resolve an asserted

common contention.

P&G's first argument presents the heart of the dispute. As noted, P&G insists the falsity or truth of the "flushable" label cannot be shown false on a class-wide basis, because class members do not share a common understanding of the term's meaning, and many interpret it differently than Pettit. The relevant legal standard, however, which P&G acknowledges, does not require that class members have a uniform understanding of the meaning of the term "flushable." The Ninth Circuit has summarized:

> Plaintiff's claims under the California consumer protection statutes are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this standard, Plaintiff must "show that 'members of the public are likely to be deceived.' " *Id*. (citation omitted); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). This requires more than a mere possibility that [defendant's] label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 129 Cal.Rptr.2d 486, 495 (2003). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

*Ebner*, *supra*, 838 F.3d at 965.

Thus, Pettit has no burden to establish that there is a uniform understanding among putative class members as to the meaning of "flushable", or that all or nearly all of them shared any specific belief. While Pettit's claims will fail if she establishes no more than a "mere possibility" that the "flushable" term "might conceivably be misunderstood" by "some few" unreasonable consumers, she can prevail through an objective showing of a probability that a "significant portion" of the relevant consumers acting reasonably "could be misled." Although P&G cites to the correct standard, its opposition is replete with assertions that class certification should be denied because Pettit has not shown, and cannot show, "that all class members interpret

"flushable" in the same way."[2] Because that is not the relevant inquiry, the basic premise of P&G's opposition to class certification fails.

P&G is on somewhat more solid ground when it argues that Pettit's showing is subject to at least some criticism, even focusing only on the correct question of whether there is evidence to demonstrate a probability that a "significant portion" of the relevant consumers acting reasonably "could be misled." As P&G points out, Pettit's moving papers rely primarily on definitions attributed to non-consumer sources, including wastewater agencies, the FTC, her expert Barry Orr (whose background is in municipal wastewater operations), and P&G. The definitions offered by these entities require a "flushable" product to be compatible not just with household toilets and plumbing, but with the entire wastewater treatment process. For example, they require a "flushable" product to be compatible with municipal sewage lines, wastewater equipment, and the natural environment. These sources look to how a "flushable" product behaves after flushing, including its buoyancy and whether and how quickly it breaks up. Some suggest a product should not be labeled as "flushable" if it contains certain ingredients, including plastic, regenerated cellulose, and synthetic components. While at least some inferences may be drawn from this evidence as to what is likely to mislead reasonable consumers, Pettit's direct showing on that critical issue is thin.

In her opening papers, Pettit declined to offer any consumer survey evidence, citing instead to authority that such evidence is not necessarily required, if the probability of consumers being misled can be evaluated from other evidence.[3] On reply, however, Pettit proffered the declaration of Dr. J. Michael Dennis, presenting the results of a consumer survey he designed and conducted

---

[2] Other examples include: ". . . if the meaning of "flushable" is not common to the class, it follows that plaintiff would need to use individualized inquiries to determine what it means for different class members," and "There is no basis for plaintiff's assumption that the meaning of "flushable" is intrinsically common to all class members."

[3] Pettit asserts: "California courts have held that proof of deception does not require expert testimony or consumer surveys." *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016). *See also id*. ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers.")

regarding consumers' perceptions of the "flushable" label on the packaging of moistened wipes. P&G was given additional time to respond to the Dennis declaration, and the issues have now been fully briefed. While the parties vigorously dispute whether the Dennis survey was properly conducted and produced reliable results, P&G's complaints go to the weight of the evidence, and do not preclude its admissibility. Nor does P&G advance any argument that the relevant question simply is not susceptible to class-wide resolution through proof in the form of a consumer survey.

Accordingly, while Pettit may need to bolster her showing if she hopes to prevail at trial, for purposes of the present motion she has adequately established that common proof can answer on a class-wide basis the critical central question as to whether P&G's labeling of Freshmates as "flushable" gives rise to a probability that a significant portion of the relevant consumers acting reasonably could be misled. Furthermore, by the same token, Pettit has made a sufficient showing that materiality can be resolved on a class-wide basis.

Finally, pointing to various alleged flaws in Pettit's damages model, P&G argues she has not advanced a reliable method for calculating damages on a class-wide basis. The first of these flaws are that the statistical analysis of Colin Weir, upon which Pettit relies, does not include "substantially all products that compete with Freshmates," including prices from Costco and Amazon, does not differentiate between various "private label brands," and does not account for all independent variables across the time period. Next, P&G argues Weir's regression is flawed because he "miscoded the 'brand' variable" for two products," and when the error is corrected the model shows there may be no premium associated with the "flushable" claim. Again, while these arguments go to the weight of the evidence and may provide fertile ground for cross-examination at trial, they do not render the evidence inadmissible nor otherwise support denial of class certification.

### C. Typicality

"Typicality focuses on the class representative's claim — but not the specific facts from which the claim arose — and ensures that the interest of the class representative aligns with the

interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation and internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* Pettit's claims are typical of the putative class claims; she claims to have purchased Freshmates under the apprehension they were appropriate for flushing down the toilet, and now alleges she is owed restitution of the price premium she paid for an ostensibly "flushable" product because P&G's "flushable" label was false.

P&G nevertheless challenges Pettit's typicality arguing there is evidence suggesting Pettit's unique plumbing problems were to blame for her own experience with clogging after flushing Freshmates wipes. Pettit's personal experience with Freshmates, however, is not crucial to her typicality. Like the class generally, she seeks restitution for a premium paid for what she alleges was a falsely-labeled product, and she supports her claim with evidence of Freshmates' general unsuitability for flushing (in her view), totally apart for her own experiences flushing Freshmates. This is sufficient to find her claims typical. *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 64 (E.D.N.Y.) ("[P]laintiff paid a premium for a product that misrepresented itself as flushable. The injury is the payment of an inflated price, not the clog. What happened after his purchase, as a result of his sewage disposal system or the condition of his pipes, is irrelevant to the class's premium price theory."); *see also Just Film*, 847 F.3d at 1116 ("Typicality focuses on the class representative's claim — but not the specific facts from which the claim arose . . . .").

**D. Adequacy**

P&G argues Pettit is an inadequate class representative because, in its view, she lacks Article III standing to advance claims based on versions of Freshmates she did not purchase or to seek injunctive relief.[4] P&G's first argument is based on the fact that it apparently sold three

---

[4] P&G also argues Pettit's atypicality renders her an inadequate class representative. This adequacy argument necessarily fails with P&G's typicality argument.

different versions of Freshmates during the class period, each with a different composition and, allegedly, a different "dispensability and flushability profile." In reality, this is more an argument regarding typicality than adequacy, and Pettit's claims are typical of the class claims because they are "reasonably coextensive." Like the class generally, Pettit claims to have overpaid for "flushable" Freshmates that were not in fact flushable, and she presents evidence that the relevant iterations of Freshmates were similarly un-flushable, regardless of variations in their composition.[5] P&G has not indicated why Pettit cannot "adequately protect the interests of the class," other than questioning her standing. Standing, however, is not a requirement of Rule 23; what matters is that the class representative satisfies the requirements of Rule 23 and has standing to bring her claims, not the claims of every class member. *See Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013) ("Transmogrifying typicality or commonality into an issue of standing would undermine the well-established principles that in a class action, standing is satisfied if at least one named plaintiff meets the requirements, . . . and that the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." (citation, internal quotation marks, and brackets omitted)); *Swearingen v. Yucatan Foods, L.P.*, 24 F. Supp. 3d 889, 899 (N.D. Cal.), *vacated on other grounds upon reconsideration*, 59 F. Supp. 3d 961 (N.D. Cal. 2014) ("[P]laintiffs here do not claim themselves to have standing to assert claims related to products they did not purchase, only that they may be potential representatives of a class of people who have such standing. Whether such a class may be certified, and whether these plaintiffs are determined to be adequate representatives, are questions for another day."); *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2017 WL 1155398, at *41 (E.D.N.Y. Mar. 27, 2017) ("Kurtz's claim is typical of the class he seeks to represent though he did not buy every flushable

---

[5] Pettit's evidence indicates that only two iterations of Freshmates were sold in California during the class period, and that both were similarly not "flushable." To the extent P&G can show at trial that certain iterations are flushable while others are not, it may implicate damages and available relief. At present, however, Pettit makes a sufficient showing of typicality and adequacy. It is also worth noting that P&G expressly concedes it "is not suggesting that some version of Freshmates were 'flushable' and that others were not."

product at issue in the Kimberly-Clark class."). Moreover, given the apparent similarities between the Pettit's claims and the class claims, standing is satisfied in this case. *See Gratz v. Bollinger*, 539 U.S. 244, 263-65 (2003) ("[T]here is a question whether the relevance of this variation, if any, is a matter of Article III standing at all or whether it goes to the propriety of class certification pursuant to Federal Rule of Civil Procedure 23(a). . . . Regardless of whether the requirement is deemed one of adequacy or standing, it is clearly satisfied in this case. . . . ."). Finally, Pettit's testimony that she does not intend to purchase Freshmates in the future does not deprive her of standing to seek injunctive relief. Pettit has a cognizable interest in a market where prices are not distorted by any misrepresentations.

**E. Predominance**

In challenging commonality, P&G also challenges whether questions of law or fact common to class members predominate. In this instance, the predominance and commonality issues collapse, and Pettit has adequately shown that the common issues discussed above are also sufficiently predominate.

**F. Superiority**

"The matters pertinent to [determining superiority include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." These factors all indicate a class action is superior to other potential methods of litigating the class members' claims, and P&G advances no argument to the contrary. Superiority is therefore satisfied.

# V. CONCLUSION

Plaintiff's motion to certify is granted.

**IT IS SO ORDERED**.

Dated: August 3, 2017

_____
RICHARD SEEBORG
United States District Judge

ORDER GRANTING MOTION FOR CLASS CERTIFICATION
CASE NO. 15-cv-02150-RS
11