1
2
3
4
5

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE MCCRARY (State Bar No. 262670)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 271-6469
Facsimile:  (415) 449-6469

6
7
8
9

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI (State Bar No. 181547)
KRISTEN L. SAGAFI (State Bar No. 222249)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

10
11
12
13

**SPANGENBERG SHIBLEY & LIBER LLP**
STUART E. SCOTT (*pro hac vice* admission)
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924

14

Attorneys for Plaintiffs

15

UNITED STATES DISTRICT COURT

16

NORTHERN DISTRICT OF CALIFORNIA

17

SAN FRANCISCO DIVISION

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JAMIE PETTIT, et al., on behalf of themselves, the general public and those similarly situated, | CASE NO. 3:15-cv-2150 RS |
| Plaintiffs, | **UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | Date: December 6, 2018 |
| Defendant. | Time: 1:30 p.m. |
| | Courtroom 3, 17th Floor |
| | Judge: Hon. Richard Seeborg |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................**Error! Bookmark not defined.**

II.    BACKGROUND FACTS AND DETAILS OF SETTLEMENT......... **Error! Bookmark not defined.**

   A.   Litigation History ..............................................**Error! Bookmark not defined.**

      1.   Pettit Action ...........................................**Error! Bookmark not defined.**

      2.   Ramcharitar Action and Motion to Dismiss ................................. 4

      3.   The Belfiore Action ...................................**Error! Bookmark not defined.**

      4.   Motion to Stay........................................................................................ 5

      5.   Class Certification...................................**Error! Bookmark not defined.**

      6.   New Class Representatives and Settlement Negotiations............. **Error! Bookmark not defined.**

   B.   The Proposed Settlement ..................................**Error! Bookmark not defined.**

      1.   Monetary Relief ................................................................................. 6

      2.   Changed Practices ..................................**Error! Bookmark not defined.**

      3.   Administrative Expenses, Attorneys' Fees and Costs, and Incentive Awards ....... **Error! Bookmark not defined.**

      4.   Notice ...................................................**Error! Bookmark not defined.**

   C.   Plaintiff's Analysis of Settlement ................................................................ 8

III.   ARGUMENT ............................................................................. 10

   A.   Preliminary Approval Is Warranted.................................................... 10

      1.   The Settlement is Fair and Is Likely To Be Approved. ..**Error! Bookmark not defined.**

      2.   Other Factors Also Demonstrate that the Settlement is Fair and Likely to Be Approved.........................................................**Error! Bookmark not defined.**

         a.   The Strength of Plaintiffs' Case and the Risks of Further Litigation ................ **Error! Bookmark not defined.**

         b.   The Amount Offered in Settlement............................**Error! Bookmark not defined.**

      3.   Attorneys' Fees, Costs and Incentives ......................**Error! Bookmark not defined.**

   B.   The Settlement Class Should Be Conditionally Certified...**Error! Bookmark not defined.**

      1.   Common Questions Predominate..................................**Error! Bookmark not defined.**

a.  All Class Members Are Victims of the Same Misconduct. ....................................... 14

b.  The Consumer Protection Laws Are Sufficiently Similar. ....................................... 14

c.  Plaintiffs' Unjust Enrichment Claims Can Be Pursued on a Nationwide Basis. **Error! Bookmark not defined.**

2.  Nationwide Settlement Classes Are Still Permitted After Hyundai. ............................ 21

C.  The Proposed Notice Is Adequate.......................................**Error! Bookmark not defined.**

IV.  DATES FOR THE FINAL APPROVAL PROCESS.............**Error! Bookmark not defined.**

V.  CONCLUSION .......................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

## CASES

*Accord Porter v. Hu*, 116 Haw. 42, 54 (Ct. App. 2007) ................................................ 20

*Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996) ................................................................................................................................... 20

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ........................................................................................................................ 22

*Andren v. Alere, Inc.*, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) .................................. 15, 19

*Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) ................. 15

*Belfiore v. P&G*, 140 F. Supp. 3d 241, 248 (E.D.N.Y. 2015) ............................................ 4

*Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1132 (9th Cir.) ................................... 9, 24

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). ....................... 11

*Class Plaintiff v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) ....................... 10

*ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) ................................................. 9

*Daugherty v. Sony Elecs., Inc.*, 2006 WL 197090 (Tenn. Ct. App. 2006) ........................ 20

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ........................................ 22

*Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2015) .................................... 15

*Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017) ................................ 17

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) ............... 20

*In re Abbott Labs. Norvir Anti-Tr. Litig.*, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ................................................................................................................................ 18

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) ........ 20

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) ...................................................................................................... 15

*In re Checking Account Overdraft Litig.,* 307 F.R.D. 630, 647 (S.D. Fla. 2015) ............. 19

*In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ............................................................................................................................ 23

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1338 (S.D. Fla. 2013) ................................................................. 20

*In re Hydroxycut Marketing & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) ................................................................................................................................. 15

*In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 689 (9th Cir. 2018) .................. 13, 21, 22

*In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ........................... 19

*In re Netflix Privacy Litig.*, 2012 WL 2598819 (N.D. Cal. July 5, 2012) ................................. 24

*In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) ............................................................................................................................. 15

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007) ........................ 24

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ....................................................................... 17

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121–22 (9th Cir. 2017) ........................................... 17

*Koller v. Deoleo*, Case No. 14-cv-2400 (N.D. Cal) ................................................................... 13

*Kwikset v. Superior Court*, 51 Cal. 4th 310, 321-22 (2011) ...................................................... 20

*Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012) ....................................................... 12

*Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) .......................... 15

*Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 358–59, 726 A.2d 702 (1999) ............... 16

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................................ 22

*Metcap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756 (Del. Ch. Feb. 27, 2009), aff'd sub nom. Metcap Sec. LLC v. Pearl Sr. Care, Inc., 977 A.2d 899 (Del. 2009) ............................................................................................................................. 20

*Mounce v. CHSPSC, LLC*, 2017 WL 4392048 (W.D. Ark. Sept. 29, 2017) ............................. 15

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ............................................................................................................. 3, 9, 10, 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ....................... 11

*One Step Up, Ltd. v. Webster Bus. Credit Corp.*, 87 A.D.3d 1, 14 (N.Y. App. Div. 2011) ............................................................................................................................. 20

*Patterson v. BP Am. Prod. Co.*, 240 P.3d 456, 469 (Colo. App. 2010), aff'd, 263 P.3d 103 (Colo. 2011) ..................................................................................................... 17

*Peltier Enters., Inc. v. Hilton,* 51 S.W.3d 616, 624 (Tex.App.2000) ........................................ 17

*Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.,* 710 F.Supp.2d 458, 477 (D. Del. 2010) ....................................................................................................................... 19

*Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1591 (2008) ............................................. 20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .............................................................. 22

*Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–59 (D. Nev. 2009) ................................. 17

*Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 14 (2001), *aff'd*, 356 N.C. 292 (2002) .................17

*Powers v. Lycoming Engines,* 245 F.R.D. 226, 231 (E.D. Pa. 2007) .........................................19

*Reed v. Dynamic Pet Prods.*, 2016 WL 3996715 (S.D. Cal. July 21, 2016) .............................15

*Rosenburg v. I.B.M.*, 2007 WL 128232 (N.D. Cal. 2007) ...........................................................21

*Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 (N.D. Cal. 2009) ...............................3, 10

*Schroeder v. Buchholz*, 622 N.W.2d 202, 207–08 (N.D. 2001) ..................................................20

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) ..........................19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)....................15

*Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838 (9th Cir. 2010) .........................................24

*Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 542 (Ct. App. 2002).................20

*Weinberg v. Sun Co.*, 565 Pa. 612, 617–18 (2001) .....................................................................16

*Wittman v. CB1, Inc.*, 2016 WL 3093427 (D. Mont. June 1, 2016) ..........................................15

## STATUTES

Ark. Bus. & Com. Code § 4-88-107(a) ........................................................................................15

Cal. Civ. Code 1770(a)(2), (4), (7) ..............................................................................................15

Colo. Rev. Stat. § 6-1-105 (1)(b), (d), (g) ...................................................................................15

MS Code § 75-24-5(b), (d), (g)....................................................................................................15

OR Rev. Stat. § 646.608(b), (d) , (g) ...........................................................................................15

Tenn. Com. Code § 47-18-104(b)(2), (4), (7) ..............................................................................15

Tex. Bus & Com. Code § 17.46(2), (4), (7) .................................................................................15

## OTHER AUTHORITIES

4 Conte & Newberg, NEWBERG ON CLASS ACTIONS ("Newberg") § 11.50 at 155
      (4th ed. 2002) ....................................................................................................................9, 10

https://www.fjc.gov/sites/default/files/2017/Rules-Amendments-2018-Supreme-
      Court-Transmittal.pdf ...........................................................................................................10

## RULES

Fed. R. Civ. Proc., Rule 23(c)(2)(B) ............................................................................................22

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on December 6, 2018 at 1:30 p.m. or as soon thereafter as the matter may be heard,[1] in Courtroom 3, 17th Floor, before the Honorable Richard Seeborg, Plaintiffs shall and hereby do move the Court for an order:

(1) Of preliminary approval of the settlement of this class action as set forth in the class action settlement agreement ("Settlement Agreement")[2] attached as Exhibit 1 to the Declaration of Adam Gutride ("Gutride Declaration" or "Gutride Decl.") filed herewith;

(2) Of conditional certification, for settlement purposes only, of a settlement class defined as "all Persons who purchased the Product in the United States between April 6, 2011 and the date of Preliminary Approval, excluding purchases made in the State of New York and purchases made for purposes of resale." . The ""Product" means  Charmin Freshmates Flushable Wipes and any other pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label;

(3) Directing the dissemination of notice in the form and manner set forth in the Settlement Agreement; and

(4) Setting a date for a final approval hearing.

A copy of the [Proposed] Order Granting Preliminary Approval is attached to the Settlement Agreement as Exhibit C and also separately submitted herewith.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Gutride Declaration, the Declaration of Jeanne C. Finegan, and the pleadings and papers on file in this action, and any other matter of which this Court may take judicial notice.

---

[1] Plaintiffs will separately file an unopposed administrative motion to advance the hearing date to November 15, 2018.

[2] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3        Plaintiff Jamie Pettit and the plaintiffs newly-named in the proposed amended complaint,

4    Karla Ramcharitar, Gloria Wiltrakis, Cheryl Senko, Debra Jewell, Susan Hartzfel, Kenneth Luke,

5    Linda Feiges, Willie Perez, Dian Cotton, Marlena Hinkle, Phyllis Jones, Glenn Katz, Eilene

6    Shaffer, Charles Tippe, Sandra Flores, and Roxy Vance (collectively, the "Plaintiffs"), respectfully

7    move for preliminary approval of a proposed class action settlement with Defendant The Procter &

8    Gamble Company ("P&G"), the terms and conditions of which are set forth in the Settlement

9    Agreement.  P&G does not oppose this motion and has approved the form of the proposed Order

10   of Preliminary Approval submitted herewith.

11       This case concerns Charmin Freshmates Flushable Wipes and any other pre-moistened

12   wipes sold under the Charmin brand name bearing the word "flushable" on the package label (the

13   "Product"). Plaintiff Jamie Pettit filed a complaint in San Francisco County Superior Court (which

14   P&G subsequently removed to this Court) alleging that P&G marketed and sold the Product with

15   the representations "flushable," "septic safe," and "safe for sewer and septic systems," although

16   the wipes are not suitable for disposal by flushing down a toilet, are not regarded as flushable by

17   municipal sewage system operators, do not disperse upon flushing, and routinely damage or clog

18   plumbing pipes, septic systems, and sewage lines and pumps. P&G denies these allegations and

19   maintains that the Product performs as advertised. This Court certified a class of California

20   consumers on August 3, 2017, with Pettit as the only named plaintiff. Plaintiffs' counsel also has

21   been litigating a similar case against P&G in the Southern District of Ohio. After protracted

22   discovery and investigation by Plaintiffs' counsel, on April 17, 2018, the parties participated in an

23   all-day mediation, which resulted in the proposed settlement memorialized in the Settlement

24   Agreement on behalf of consumers in all states other than New York.[3]

25       It is now appropriate to certify a class for settlement purposes only of persons who

26   purchased the Product in the United States (excluding purchases in New York and purchases for

27   ───────────────
     [3] Claims for purchases made in New York were separately certified in a case brought by other
     plaintiffs' counsel that remains pending in the Eastern District of New York.  This settlement will
28   not affect claims for purchases made in New York.

1   resale), because P&G's alleged misrepresentations and challenged practices are uniform for all

2   purchasers and the elements of the legal claims are nearly identical in all states. The minor

3   differences among state laws are immaterial to certification, particularly because the laws of all

4   relevant states are substantively identical to those in at least one of the seventeen states represented

5   by a Plaintiff, i.e., Alabama, Arizona, California, Colorado, Florida, Illinois, Maryland,

6   Massachusetts, Michigan, Missouri, Mississippi, New Jersey, Ohio, Pennsylvania, Rhode Island,

7   Texas, and West Virginia.

8       Due in part to this litigation, P&G has already stopped manufacturing the Product in the

9   formulation(s) in use at the time the litigation commenced. P&G has agreed that versions of the

10  Product manufactured after January 2016 do not and will not contain bicomponent

11  (polyester/polyolefin) fibers. P&G has also agreed to be subject to a two-year injunction further

12  modifying the marketing of the Product and setting forth testing protocols with which the Product

13  must comply.

14      The parties have agreed to a claims-made settlement. Each Settlement Class Member, upon

15  submission of a Valid Claim, shall receive a refund in excess of what they would likely receive at

16  trial, according to Plaintiffs' own expert's calculations.  Each Settlement Class Member shall

17  receive a refund of sixty cents ($0.60) for each package of the Product they purchased in the

18  United States (except in New York) during the Class Period, regardless of the price the Settlement

19  Class Member paid for the package or the number of wipes contained in each package. Claims

20  without Proof of Purchase are limited to seven packages ($4.20) per Household; claims with Proof

21  of Purchase are limited to fifty packages ($30.00) per Household.

22      Notice is to be provided to the class via several methods, including (1) half-page

23  advertisements in *Good Housekeeping*, *National Geographic* and *People* magazines, (2) more than

24  87 million impressions of online advertising targeted to likely users of the Product, and a (3) a

25  press release through a national wire service. A well-known third-party claim administrator had

26  designed the notice plan and has attested that notice will reach a substantial majority of likely class

27  members.  *See generally* Declaration of Jeanne C. Finegan ("Finegan Decl.").

28      The Settlement Agreement is attached as Exhibit 1 to the Declaration of Adam Gutride

filed herewith. The proposed class notices are attached as Exhibit B to the Settlement Agreement.

The settlement falls within the standard for preliminary approval because it is "within the range of reasonableness." *See Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 at *9 (N.D. Cal. 2009). There is a presumption of fairness because the settlement was reached after substantial discovery and arms-length negotiations. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Numerous other factors also strongly favor the settlement, including the risks of further litigation and the informed opinion of experienced counsel on all sides who have negotiated and approved it based upon their views of the strengths and weaknesses of the claims and defenses. *See id.* (finding that experienced counsel's views regarding settlement are entitled to great weight).

Accordingly, Plaintiffs request that the Court preliminarily approve the settlement, order that the proposed notice be disseminated, and schedule a final approval hearing.

## II.  BACKGROUND FACTS AND DETAILS OF SETTLEMENT

### A.  Litigation History

#### 1.  *Pettit* Action

On April 6, 2015, Jamie Pettit filed a class action complaint against P&G in the Superior Court of the State of California, County of San Francisco, Case No. CGC-15-545175. On May 13, 2015, P&G removed the Pettit Action to the United States District Court, Northern District of California, where it was assigned Case No. 3:15-cv-02150-RS. In her complaint, Pettit alleges that P&G manufactures and markets the Product and that, although the Product's packaging states that the wipes are "flushable," "septic safe", and "safe for sewer and septic systems," the wipes are not suitable for disposal by flushing down a toilet, are not regarded as flushable by municipal sewage system operators, do not disperse upon flushing, and routinely damage or clog plumbing pipes, septic systems, and sewage lines and pumps. Pettit's original complaint alleged that P&G is liable for (a) violations of the California Consumers Legal Remedies Act, Cal. Civil Code §1750 *et seq.*, (b) false advertising in violation of California Business and Professions Code §17500 *et seq.*, (c) fraud, deceit and/or misrepresentation, (d) negligent misrepresentation, and (e) unfair, unlawful and deceptive trade practices in violation of California Business and Professions Code §17200 *et*

*seq.* P&G denies all Plaintiffs' allegations in the *Pettit* case and maintains that the Product performs as advertised.

### 2.     *Ramcharitar* **Action**

On July 10, 2015, Karla Ramcharitar filed a class action complaint against P&G in the United States District Court, Southern District of Ohio, Case No. 1:15-cv-00457-MRB. Ramcharitar filed an amended complaint, which added plaintiffs Gloria Wiltrakis and Cheryl Senko, on January 8, 2016, and which makes similar allegations as Pettit regarding the Product . These plaintiffs seek to represent consumers in Ohio, Illinois, and Florida. They allege that P&G is liable for (a) breach of express warranty, (b) negligent design, (c) negligent misrepresentation, (d) failure to warn, (e) violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201 *et seq.*, (f) unjust enrichment, (g) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.*, (h) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, §805 Ill. Comp. Stat. §505 (2007), (i) tortious breach of warranty, and (j) fraud. On February 15, 2016, P&G filed a motion to dismiss and motion to strike in the *Ramcharitar* case, which that court has not yet decided. On March 1, 2016, the court entered a stay in that case, which it lifted on April 4, 2017.  No motion for class certification has yet been filed in the *Ramcharitar* case.  P&G denies all Plaintiffs' allegations in the *Ramcharitar* case and maintains that the Product performs as advertised.

### 3.     *Belfiore* **Action**

In 2014, a consumer in New York filed a suit against P&G alleging that the Product were falsely advertised as "flushable." The case has been overseen by Judge Weinstein of the Eastern District of New York.  Soon after the case was filed, Judge Weinstein encouraged the parties to that matter to discuss a settlement that would involve a claims-made structure and changed practices. *Belfiore v. P&G,* 140 F. Supp. 3d 241, 248 (E.D.N.Y. 2015). Per Judge Weinstein's suggestion, Pettit and the plaintiffs in the *Ramcharitar* case, through their counsel, participated in numerous settlement discussions with P&G, including attending an in-person mediation in December 2016 before Magistrate Judge Robert M. Levy and participating in several follow-up telephone calls, but resolution could not be reached. (Gutride Decl. at ¶ 6.) In February 2017,

Judge Weinstein certified a class of persons who purchased the Product in New York. P&G sought and received permission from the Second Circuit to appeal that decision, and the appeal has not yet been decided. P&G denies all Plaintiffs' allegations in the *Belfiore* case and maintains that the Product performs as advertised. The claims of the consumers in the New York case are excluded from this agreement: no settlement benefit is offered for such purchases, and all those claims are carved out of the settlement release.

### 4.        Motion to Stay

On June 23, 2016, P&G filed a motion to stay this litigation pending a response by the Federal Trade Commission to issues referred to it in connection with the *Belfiore* action discussed above. The Court denied P&G's request on July 21, 2016.

### 5.        Class Certification

On February 4, 2017, Plaintiff Pettit moved for class certification, whichP&G opposed. On August 3, 2017, the Court certified the following class:

> "All persons who, between April 6, 2011 and August 3, 2017 purchased in California the Charmin Freshmates Flushable Wipes (excluding purchases for purpose of resale)."

### 6.        New Class Representatives

During the litigation, Plaintiffs' counsel were retained by thirteen additional consumers from around the country who had purchased P&G's Product. Through their counsel, these thirteen individuals gave notice to P&G that they intended to bring actions similar to the *Pettit* and *Ramcharitar* cases, asserting the laws of various states, and to represent these additional persons and similarly situated persons who made purchases in those states and throughout the United States (excepting purchases made in New York).

### B.        The Proposed Settlement

The proposed settlement was reached following significant, hard fought litigation and several rounds of arms-length settlement discussions between capable counsel, most recently before Robert A. Meyer of JAMS ADR, Inc. ("JAMS") in Chicago, Illinois on April 17, 2018. (Gutride Decl. at ¶ 6.)

The Settlement Class is comprised of all Persons, other than Excluded Persons, who

purchased the Product in the United States between April 6, 2011 and the date of Preliminary

Approval, excluding purchases made in the State of New York and purchases made for purposes

of resale. Excluded Persons include P&G's affiliates, the Court, the mediator, government entities,

and those who opt out of the class.

### 1. Monetary Relief

Class Members can file a claim for a cash payment of sixty cents ($0.60) for each package

of the Product purchased in the United States (except in New York) during the Class Period (i.e.,

between April 6, 2011 and the date of Preliminary Approval), regardless of the price the

Settlement Class Member paid for the package or the number of wipes contained in each package,

subject to the following limitations: (a) a maximum of four dollars and twenty cents ($4.20) shall

be paid on the combined claims submitted by any Household for claimed purchases that are not

corroborated by Proof of Purchase, and (b) a maximum of thirty dollars ($30.00) shall be paid on

the combined claims submitted by any Household for claimed purchases that are corroborated by

Proof of Purchase.  The maximum payment to any Household shall not exceed thirty dollars

($30.00).

The claim form is a simple one-page form that can be completed in a few minutes. It can

be completed online or submitted by mail. Proof of Purchase can also be submitted electronically

or in hard copy.

### 2. Changed Practices

The Settlement Agreement also contemplates changed practices, some of which have

already occurred, as well as injunctive relief. Partly as a result of the litigation, P&G has stopped

manufacturing the Product in the formulation(s) that it used at the time the *Petitt* and *Ramcharitar*

cases were  commenced. (Gutride Decl., Ex. 1 at § 3.10.) P&G also agreed that versions of the

Product manufactured after January 2016 do not and will not contain bicomponent

(polyester/polyolefin) fibers. (Id.) Further, P&G has agreed that, for a period ending two years

after the Effective Date, it shall be enjoined by the Court as follows:

> a) As of the Effective Date, Product marketed by P&G will not contain bicomponent (polyester/polyolefin) fibers;

b) On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to include a statement that "Your satisfaction is guaranteed.  For details of our refund program go to our website at www._____.com/_____."  P&G will provide details regarding the satisfaction guarantee on the Charmin website, including reasonable purchase price refunds to consumers who are dissatisfied with the product;

c) On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to include the statement: "Use only in well-maintained plumbing systems";

d) As of the Effective Date, the Product will comply with current and future versions of the INDA Guidelines, including the slosh box test, provided P&G is a member of INDA and the organization maintains the same purpose and mission, with a similar membership composition, as of the date of the Agreement;

e) The Product marketed by P&G on or after June 13, 2018, will comply with the May 2018 more stringent INDA GD4 test protocols which among other things (1) decrease the slosh box test duration from 180 minutes to 60 minutes, (2) increase the slosh box text pass-through percentage requirement from 25% to 60%, and (3) decrease the municipal pump test average power increase over baseline from 15% to 5%.

P&G's consent to adoption of the GD4 protocols, and its further consent to compliance with the more stringent GD4 protocols from June 13, 2018 forward (and before industry-wide compliance to GD4), was made in part due to the pendency of this litigation.[4]

**3.   Administrative Expenses, Attorneys' Fees and Costs, and Class Representative Payment**

All costs of notice and administration of the settlement will be paid by P&G. Plaintiff's Counsel will apply to the Court for Class Representative Payments from P&G of $5,000 for Pettit, $3,000 each for Ramcharitar, Wiltrakis and Senko, and $1,000 for each of the other named plaintiffs. Plaintiffs aided Class Counsel in successfully prosecuting this litigation and reaching a settlement, including locating and forwarding responsive documents and information and providing discovery.  Ms. Pettit also sat for a full-day deposition. These payments are designed to compensate Plaintiffs for (1) the time and effort undertaken in and risks of pursuing this action

---

[4] For the avoidance of doubt, the distribution or sales by P&G or by third parties of Product manufactured prior the implementation of the labeling changes described in the Settlement Agreement shall not constitute a violation of the Settlement Agreement or the injunction.

(including the risk of liability for the costs of suit) and (2) because they are agreeing to a release broader than the one that will bind settlement class members.

Class Counsel will also apply to the Court for an award from P&G of Attorneys' Fees and Costs in a total amount not to exceed $2,150,000.00, which is less than their actual lodestar and costs. Plaintiffs will file their motion for attorneys' feescosts, and payments to the Class Representatives and supporting declarations, and will post copies on the settlement website, at least forty-two (42) days before the final approval hearing, which is two weeks before the deadline for Class Member objections.

### 4.  Notice

The proposed claim administrator (Heffler Claims Group) will establish a settlement website, which shall contain the settlement notices, a contact information page that includes at least address and telephone numbers for the claim administrator and Class Counsel, the settlement agreement, the signed order of preliminary approval, online and printable versions of the claim form and the opt out forms, answers to frequently asked questions, and (when it becomes available) Class Counsel's motion for attorneys' fees, costs, expenses and payments to the Class Representative, and the motion for final approval. (Finegan Decl. at ¶ 34.)

Notice will be published in several places, all of which will refer class members to the settlement website. (Id.)  The Published Notice will appear in *Good Housekeeping*, *National Geographic*, and People magazines, which have a combined readership of more than 90,000,000. (¶¶ 24-28.) There will be a nationwide press release.  More than 87 million impressions of online advertising will be targeted to reach likely consumers of the Product. (Id. at ¶¶ 29-31.) Finally, the claims administrator will operate a toll-free information line to provide information about the case and settlement. (Id. at ¶ 35.)

### C.  Plaintiffs' Analysis of Settlement

Based on their reasoned judgment, Plaintiffs' Counsel believes the proposed Settlement is fair and reasonable. (Gutride Decl. at ¶¶ 8-19.) Plaintiffs believe that the evidence obtained in discovery showed that the Product's labels were likely to (and did) deceive consumers and that P&G knew of the deceptive nature of the packaging. (Id. at ¶ 16.) P&G, in turn, denies Plaintiffs'

characterization of the evidence and maintains that the Product performs as advertised, and believes that the evidence produced in discovery supports that conclusion. Even if Plaintiffs obtained a judgment in their favor, that judgment would likely be appealed, so even in the best case, it could take years for Plaintiffs to obtain relief for consumers. (Id. ¶¶ 16-17.)

Plaintiffs and Plaintiffs' Counsel believe that a refund to class members of $0.60 per package is an excellent result and at least as good or better than the likely recovery at trial. (Id. at ¶ 11.) In particular, there is the possibility that the court will grant P&G's pending motion to dismiss or decline to certify a class in the *Ramcharitar* case; that the California class could be decertified after an unfavorable opinion in the related *Belfiore* action by the Second Circuit or by the Supreme Court on certiorari; that in both the *Pettit* and *Ramcharitar* cases, summary judgment could be entered against Plaintiffs; and/or that Plaintiffs will be unable to prove liability, damages or entitlement to injunctive relief at trial on a classwide or individual basis. (Id. at ¶¶ 13-15.)

In addition, the settlement provides for a greater monetary benefit than would likely be achieved at trial even under Plaintiffs' "best case" scenario. Plaintiffs' expert Colin Weir has performed a detailed regression analysis to calculate the price premium attributable to the challenged representations on the Product and concluded that the premium is 9.19 percent of the purchase price of each package. (Declaration of Colin Weir in Support of Plaintiff's Motion for Class Certification ("Weir Decl") (dkt. # 109-1) at ¶ 75.) The average price per package sold was $4.01, and thus, at trial, consumers would likely not receive more than 34 cents per package in restitution. The settlement payment of $0.60 per package is approximately 175% of the best-case recovery on a per-package basis. (Gutride Decl. ¶ 10.) Further, in addition to the monetary relief, the changed practices will benefit class members and other consumers. (Gutride Decl. at ¶ 12.) And, in a contested proceeding, class members who lacked proof of purchase—which is likely the majority of class members—might get nothing at all. *See, e.g., Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1132 (9th Cir. June 10, 2017), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno,* 138 S. Ct. 313 (2017) (explaining that the post-trial claims process by which each consumers' affidavits would "force a liability determination" as to that consumer).

P&G, while continuing to deny all allegations of wrongdoing, also believes the settlement

is fair, reasonable, and in P&G's interest to avoid further expense, inconvenience, and interference with its ongoing business operations.

**III.    ARGUMENT**

**A.    Preliminary Approval Is Warranted.**

Although Rule 23(e) requires court approval of a class settlement, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiff v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526, citing 4 Conte & Newberg, NEWBERG ON CLASS ACTIONS ("Newberg") § 11.50 at 155 (4th ed. 2002). At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is within the range of what might be considered "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set. *See Ross*, 2009 U.S. Dist. LEXIS 69633 at *9.

Because amendments to Rule 23(e) are scheduled to go into effect on December 1, 2018, Plaintiffs have endeavored to provide this Court with the information necessary to grant this motion under both the current and new versions of the Rule. *See generally* https://www.fjc.gov/sites/default/files/2017/Rules-Amendments-2018-Supreme-Court-Transmittal.pdf ("Amended Rules"), p. 9 (last accessed October 19, 2018). Under the guidelines articulated in the forthcoming version of Rule 23(e), the Court should make its finding to grant preliminary approval and send notice based on a "solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Advisory Comm. Notes, Amended Rules, p. 18.

**1.    The Settlement is Fair and Is Likely To Be Approved.**

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV*, 221 F.R.D. at 528; 4 Newberg at § 11.24. Before reaching the settlement, the parties' counsel engaged in extensive, highly adversarial factual investigation, which included numerous depositions, document production, responses to

interrogatories, as well as third-party and expert discovery. (Gutride Decl. at ¶ 4.) At time of settlement, there had been extensive briefing and argument on various significant legal issues, with the California class having already been certified. The parties were fully informed as to the viability of the claims and the risks to both sides if the case did not settle. (Id.)

The parties negotiated the proposed settlement in good faith, including months of intense negotiations. (Id. at ¶ 6.) Counsel for both sides are experienced class action attorneys and have fully evaluated the strengths, weaknesses, and equities of their positions. (Id.). Class Counsel believes the settlement to be in the Class' best interests, considering the costs and risks of continued litigation. (Gutride Decl. at ¶¶ 8-19.) The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See, e.g.*, *DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underling litigation.") (internal citation omitted).

## 2.    Other Factors Also Demonstrate that the Settlement is Fair and Likely to Be Approved.

A review of the fairness factors set forth in *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004), shows this settlement is likely to be finally approved.

### a.   The Strength of Plaintiffs' Case and the Risks of Further Litigation

These factors survey the potential risks and rewards of proceeding with litigation. The settlement is appropriate under these factors for the reasons explained *supra*.

### b.  The Amount Offered in Settlement

This factor "assess[es] the consideration obtained by the class members in a class action settlement." *DIRECTV*, 221 F.R.D. at 527. "[I]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).

Plaintiffs' best-case recovery would be based on the average price "premium," as calculated by a regression analysis, that the Product commands because it is labeled as "flushable" as opposed to a comparable product that is not labeled as "flushable."[5] As set forth above,

---

[5]      Plaintiffs' damage expert Mr. Weir proffered another damages theory, which relied on comparing the price of the Product with the price of regular toilet paper. However, this is a novel

Plaintiffs believe that the amount offered in settlement is approximately 175% of their likely "best case" recovery at trial on a per-package basis. Further, P&G disputes that any such premium exists, and expert testimony on the subject is likely to diverge substantially. And even if the fact finder accepted Plaintiffs' damages model, individual class members would each only receive slightly more than half of the 60 cents per package obtained under this settlement.

P&G's changed practices are also likely to benefit class members. The value of injunctive relief—including the benefit to consumers in the form of an improved marketplace—can properly be considered when evaluating a settlement's fairness. *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012) (noting that a "judicially-enforceable agreement" to maintain changed practices may be considered in a fairness inquiry).

### 3. Attorneys' Fees, Costs and Payments to the Class Representatives

In a separate motion to be filed with the motion for final approval and posted on the settlement website, Plaintiffs will ask the Court to approve payment from P&G of their reasonable attorneys' fees, costs, and expenses in a total amount not to exceed $2,150,000.00, which is less than their actual lodestar and costs. Specifically, as of the filing of this motion, Plaintiff's counsel has spent in excess of 2,800 hours working on this litigation, and its lodestar is greater than the amount it will seek in attorneys' fees. In addition, Class Counsel has additionally incurred in excess of $250,0000 in expenses for which it has not yet sought reimbursement. (Gutride Decl. at ¶ 5.) In addition, Plaintiffs will ask the Court to approve payments from P&G to the Class Representatives, as discussed above. The Court need not consider these issues at present; rather it is appropriate to defer them until the final approval hearing, after class members have had an opportunity to comment.

### B. The Settlement Class Should Be Conditionally Certified.

This Court previously certified a California class on August 3, 2017. (Dkt. # 101). Plaintiffs now seek preliminary approval, for settlement purposes only, of an expanded settlement class of consumers who purchased the Product nationwide (except in New York). The same

theory that has not been thoroughly tested and is not being used to calculate potential damages here.

common questions of fact and predominate nationwide, and certification of a nationwide class is consistent with the panel's opinion in *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 689 (9th Cir. 2018) ("*Hyundai*"), to the extent Hyundai remains good law after the Ninth Circuit completes its *en banc* review of the panel's opinion[6] Indeed, in an earlier case involving the same consumer law claims (in the context of olive oil), this Court approved a nationwide class after *Hyundai* using reasoning that also applies here:

> While this Court must consider differences in state laws as part of the predominance inquiry, this Court need not consider "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 693 (9th Cir. 2018) ("Hyundai") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). The Plaintiffs have submitted extensive briefing and supplemental materials identifying the similarities and differences among state laws and setting forth why the common issues predominate and why the differences are immaterial to this litigation. (Dkt. # 144) Further, in circumstances where there are majority and minority rules among the states—for example, where one group of states requires proof of a particular element while another group does not, there is at least one proposed class representative from each group of states, so representatives exist to prove all elements of all claims for all variations of the state laws. Were this case to proceed to trial, a verdict form could be fashioned for the jury to determine which elements had and had not been proven; it would then be a relatively simple administrative process to determine whether the causes of action had been proven under the laws of each state. For those reasons, this Court finds that common issues predominate with respect to Settlement Class.

*Koller v. Deoleo*, Case No. 14-cv-2400 (N.D. Cal), Dkt. No. 155, p. 2.

### 1.     Common Questions Predominate.

Pettit is a California resident, Ramcharitar is an Ohio resident, Wiltrakis is a Florida resident, and Senko is an Illinois resident. They are now joined by thirteen more proposed class representatives from thirteen other states (Alabama, Arizona, Colorado, Maryland, Massachusetts, Michigan, Missouri, Mississippi, New Jersey, Pennsylvania, Rhode Island, Texas, and West Virginia). The proposed First Amended Complaint,[7] in which all seventeen plaintiffs join, pleads

---

[6] Although the Ninth Circuit granted *en banc* review of the panel's *Hyundai* opinion (with arguments heard on September 27, 2018) and that opinion is thus no longer precedential, Plaintiffs present this argument in the event that this Court finds it pertinent or the Ninth Circuit ultimately confirms the panel's opinion.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 897 F.3d 1003, 1007 (9th Cir. 2018) (granting en banc review and observing "the three-judge panel disposition in these cases shall not be cited as precedent by or to any court of the Ninth Circuit").

[7] The proposed amended complaint is attached to a concurrently filed stipulation and proposed order, and will be filed in the docket upon this Court's entry of that order.

violations of statutory consumer protection laws and unjust enrichment on behalf of the nationwide (excluding New York) classes. Common questions of law and fact predominate on these claims. To the extent there are variations in state laws, the variations are immaterial, and in any event, the seventeen states from which the named Plaintiffs hail are representative of all variations among the states.

### a. All Class Members Are Challenging the Same Alleged Misconduct.

P&G sold the Product nationwide with the same labeling, using the same manufacturing and distribution practices. Just as was the case for all Californians, the claim of false advertising will present uniform issues of material fact nationwide, including whether the labeling was likely to deceive a reasonable consumer, whether the Product was in fact flushable, and whether a price premium can be demonstrated using the hedonic regression model. (Dkt. # 116.)

### b. The Consumer Protection Laws Are Sufficiently Similar.

In light of the uniform alleged false and misleading advertising, the elements that need to be proven under the consumer protection laws of the 49 states and the District of Columbia are substantively identical. To the extent differences exist, they are immaterial. At a minimum, subclasses can be created to resolve whether Plaintiffs have proved elements of their causes of action required by certain states, as the Plaintiffs hail from seventeen states that represent all permutations extent in the 49 states and the District of Columbia. To put it another way, were this case to proceed to trial, the fact finder could determine whether Plaintiffs had proved various facts—for example, that the alleged conduct was likely to deceive a reasonable consumer, or that P&G had misrepresented the flushable nature of the Product. It would then be a relatively simple matter to compare the proven elements to the required elements in each state to determine whether the case had been successful. In short, the seventeen Plaintiffs collectively have the incentive, in proving the violations of their own state laws, to prove all the elements of all the state laws. Filed herewith as Appendix A and B are, respectively, (1) a summary chart of the elements of the relevant state laws and (2) a more detailed discussion of the same, including statutory and case citations in support thereof.  These charts demonstrate predominance of common issues. To wit:

**Right of Action.** All states have established a private right of action to challenge false

advertising.[8] In addition, class treatment is available for violations of all the state laws.[9]

**Prohibition of Deceptive Conduct.** All the states prohibit the alleged misconduct in one of two ways. Forty-five states have statutes similar to the California UCL in that they have broad and general prohibitions against any kind of deceptive conduct.[10] Consumers in these states will have their interests represented by all Plaintiffs. The remaining five states—Colorado, Mississippi, Oregon, Tennessee, and Texas—have narrower statutes that, like the CLRA, prohibit specific deceptive acts, including misrepresentations as to "the source . . . or certification" of the goods, "using deceptive representations or designations of geographic origin in connection with goods or services" and "representing that goods are of a particular grade when they are not." *See, e.g.* Cal. Civ. Code 1770(a)(2), (4), (7); Colo. Rev. Stat. § 6-1-105 (1)(b), (d), (g); MS Code § 75-24-5(b), (d), (g); OR Rev. Stat. § 646.608(b), (d) , (g); Tenn. Com. Code § 47-18-104(b)(2), (4), (7); Tex.

---

[8] Alabama, California, Florida, Illinois, Maryland and Minnesota require pre-suit notice. Before suing under the laws of any of the states other than California, all Plaintiffs provided notice.

[9] While seven states' statutes (Arkansas, Alabama, Georgia, Louisiana, Tennessee, Montana, and South Carolina) prohibit class actions, numerous district courts have found that these prohibitions are not enforceable in federal court and that classes may still be certified under Rule 23 in light of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See, e.g., Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) (allowing Alabama class actions); *Mounce v. CHSPSC, LLC*, 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017) (allowing Arkansas class actions); *In re Hydroxycut Marketing & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) (allowing Georgia, Louisiana, Montana, South Carolina, and Tennessee class actions) *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) (allowing South Carolina and Montana class actions); *Wittman v. CB1, Inc.*, 2016 WL 3093427 (D. Mont. June 1, 2016) (allowing Montana class actions); *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (allowing South Carolina class actions); *Reed v. Dynamic Pet Prods.*, 2016 WL 3996715 (S.D. Cal. July 21, 2016) (allowing Louisiana class actions); *Andren v. Alere, Inc.*, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) (allowing Georgia class action). *But see Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) (disallowing Tennessee class actions); *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2015) (disallowing South Carolina class actions). To the extent this Court has concerns about any states' inclusion in the class with respect to consumer protection statutory claims, they can be included in the nationwide (except New York) class solely with respect to unjust enrichment claims.

[10] These states are Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

Bus & Com. Code § 17.46(2), (4), (7).[11] All Plaintiffs will need to prove the elements of these claims as they are at the heart of the allegations about the "flushability" of the Product.

**Knowledge and Intent.** Thirty-three states, including California and Florida, do not require a showing of either knowledge or intent, and thus, Plaintiffs from those states can represent the interests of the class members from 31 other states that also impose no such requirement.[12] New Jersey and Arizona require a showing of knowledge and intent in cases involving a concealment of a material fact; Plaintiff Glenn Katz can represent class members in those states. Plaintiff Kenneth Luke of Colorado and Linda Feiges of Maryland will need to prove P&G knowingly and intentionally deceived consumers and can represent class members in the other 15 states that also require proof knowledge and/or intent for some or all of the violations at issue.[13]

**Reliance.** Differing state rules on reliance also pose no bar to certification. The statutes in Ohio and Florida, like 29 other states, do not require a showing of "reliance" but instead only proximate causation (which some states refer to as "ascertainable loss"). Here, Plaintiffs' theory of loss causation is the same for each class member, namely that P&G's alleged misconduct led to a price premium. Plaintiffs from Ohio and Florida (Plaintiffs Ramcharitar and Senko) can thus represent class members on this question in the other similar 29 states.[14]

---

[11] Arkansas' statute also specifically prohibits most of these same activities, but goes on to note that the practices made unlawful under the act are "not limited to" the specific activities identified in the statute. Ark. Bus. & Com. Code § 4-88-107(a).

[12] These additional states are Alabama, Alaska, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, and Wisconsin. Similarly, neither the UCL nor the CLRA require proof that a violation was knowing. The UCL also does not require a showing of intent, while the CLRA requires it for some of its prohibited activities, but not all.

[13] Arkansas, Indiana, Kansas, Nevada, New Hampshire, New Mexico, South Carolina, Utah, and Wyoming have statutes similar to the CLRA and like Colorado, requiring a showing of knowledge and/or intent for some or all of the key provisions at issue in this case. Arizona, Illinois, Iowa, Minnesota, and North Dakota require a showing that the defendant intended for the plaintiff to rely on the misrepresentation. Those consumers are represented by Gloria Wiltrakis of Illinois and Susan Hartzfeld of Arizona.

[14] Alaska, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, Dakota, Oklahoma, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin.

The laws of fourteen states require reliance by the named plaintiffs.[15] Two of those fourteen—Colorado and Maryland—have expressly held, as have California and North Carolina, that there need not be any showing of reliance by absent class members.[16] The other nine have held that proof of reliance by absent class members *is* required[17] or have not answered the question.[18] These states include Pennsylvania, Texas, and Alabama, for which there are Class Representatives. The Court can still certify a class including residents of these states under this Court's ruling in *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017).  There, this Court certified a class under Pennsylvania law despite the need to prove reliance for each class member, holding that this "'does not outweigh the predominantly common issues,' including whether [the] conduct constitutes an unfair or deceptive practice and whether that conduct harmed class members." *Id.* at 292 (quoting *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121–22 (9th Cir. 2017)).[19]

Finally, six states are undecided on the issue of whether reliance is required for named plaintiffs, absent class members, or both,[20] but even assuming the most strenuous requirements (as in Pennsylvania), common issues will still predominate and a class can be certified, as in *Gold*.

**Remedies.**  Differences among the states' remedial schemes also do not bar certification. Once the fact finder makes its determination as to the relevant facts, the Court can easily determine whether a violation has been proven under each state's laws, and if so, it can order P&G

---

[15] These states are Colorado, Georgia, Indiana, Maryland, Nevada, Pennsylvania, Texas, Virginia, West Virginia, and Wyoming. In addition, Michigan requires a showing of reliance for some kinds of violations.

[16] *In re Tobacco II Cases,* 207 P.3d 20 (Cal. 2009); *Patterson v. BP Am. Prod. Co.*, 240 P.3d 456, 469 (Colo. App. 2010). *aff'd,* 263 P.3d 103 (Colo. 2011); *Luskin's, Inc. v. Consumer Prot. Div.,* 353 Md. 335, 358–59, 726 A.2d 702 (1999); *Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 14 (2001), *aff'd,* 356 N.C. 292 (2002).

[17] *See Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–59 (D. Nev. 2009); *Weinberg v. Sun Co.*, 565 Pa. 612, 617–18 (2001); *Peltier Enters., Inc. v. Hilton,* 51 S.W.3d 616, 624 (Tex.App.2000).

[18] These states are Georgia, Indiana, Virginia, West Virginia, and Wyoming.

[19] Alternatively, consumers in these states can be excluded from the consumer protection class, and permitted to pursue only their unjust enrichment claims.

[20] These states are Alabama, Louisiana, Maine, Massachusetts, Oregon, and South Dakota.

to provide the residents of that state the remedy authorized by the state law. For example, all states provide for compensatory damages, the amount of which here will be the price premium determined by the fact finder, i.e., the percentage by which the price was higher because of the challenged representations. Some states also provide for minimum damages, double or triple damages, or punitive or special statutory damages, but at least one Plaintiff hails from a state in each group of such states.[21] All but 12 state statutes (including those in all states from which the Plaintiffs hail other than Alabama, Colorado, Maryland and Mississippi) also provide for injunctive relief; thus, if the elements found by the jury equate to a violation of these states' laws, and Plaintiffs additionally show the likelihood of future harm to consumers, the Court can fashion an injunction to prohibit the challenged conduct in these 38 states.[22]

### c. Plaintiffs' Unjust Enrichment Claims Can Be Pursued on a Nationwide (except New York) Basis.

Most courts agree that the laws of the states regarding unjust enrichment do not differ materially. *See, e.g., In re Abbott Labs. Norvir Anti-Tr. Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. 2007) (certifying nationwide class; holding that the "variations among some States' unjust

---

[21] Some states allow consumers to obtain a specific monetary amount per violation, often where the amount specified is greater than actual damages. Rhode Island is one such state, thus the Plaintiff there may represent consumers in Alaska, District of Columbia, Indiana, Massachusetts, Oregon, Pennsylvania, and Virginia. Likewise, the Plaintiff from New Jersey can represent class members in the states permitting double or treble actual damages upon a showing of a violation of the statute, i.e., Hawaii, Kansas, North Carolina and Wisconsin. The Plaintiffs from California, Arkansas and Florida can represent class members in the remaining states. For purposes of this analysis, Plaintiffs looked only at states with statutory damages for which all consumers were eligible, and did not consider special provisions providing additional statutory damages to special groups of citizens, such as senior citizens and the disabled.

Some states also permit awards of either punitive damages or per-violation amounts upon showing the actions were willful, knowing, or reckless, in most cases per the court's discretion. These states are Alabama, Arizona, Connecticut, Delaware, Georgia, Idaho, Indiana, Iowa, Louisiana, Massachusetts, Missouri, Montana, Nevada, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, and Washington. Other states do not specify preconditions for the award of punitive damages. These include California's CLRA and the statutes of Vermont, Wisconsin, and the District of Columbia.  Finally there are states where additional damages have not been authorized; these include Arkansas, Florida, and New Jersey, as well as Alaska, Colorado, Hawaii, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Nebraska, New Mexico, Ohio, Oklahoma, South Dakota, Utah, West Virginia, and Wyoming.

[22] The state statutes that do not provide for injunctive relief in a consumer action are Alabama, Arkansas, Colorado, Louisiana, Maryland, Mississippi, Montana, North Dakota, Oregon, South Carolina, Virginia, and Wyoming. The other 38 states' statutes specifically authorize consumers to obtain injunctions.

enrichment laws do not significantly alter the central issue or the manner of proof"); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015) ("There is general agreement among courts that the "minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict."") (quoting *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.,* 710 F. Supp. 2d 458, 477 (D. Del. 2010)); *In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict."); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment.").

In distilling the various states' laws down to two common elements, one court explained:

> At the core of each state's law are two fundamental elements—***the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.*** The focus of the inquiry is the same in each state. Application of another variation of the cause of action than that subscribed to by a state will not frustrate or infringe upon that state's interests. In other words, regardless of which state's unjust enrichment elements are applied, the result is the same. Thus, there is no real conflict surrounding the elements of the cause of action.

*Powers v. Lycoming Engines,* 245 F.R.D. 226, 231 (E.D. Pa. 2007) (emphasis added), *rev'd on other grounds,* 2009 WL 826842, 328 Fed. Appx. 121 (3d Cir. 2009). These two elements are the same for all class members, regardless of their state of residence, as all are alleged to have paid a price premium to purchase the Product—thus, all conferred a benefit on P&G—and none allegedly received wipes that were flushable, therefore rendering it inequitable for P&G to retain the benefit. Thus, the same legal questions predominate for all class members' unjust enrichment claims.

Plaintiffs are aware of one case that found a material difference in that half the states "do not allow claims for unjust enrichment where the plaintiff has received the benefit of the bargain." *Andren v. Alere, Inc.*, 2017 WL 6509550, at *17 (S.D. Cal. Dec. 20, 2017). But that court did not explain the basis for its holding, and it was mistaken, because the "benefit of the bargain" test is no different from the determination in every state of whether it would be

1   "inequitable for the defendant to retain [the amount received from plaintiff] without compensating

2   the plaintiff."[23] *See, e.g., Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1591 (2008) ("Rather,

3   they received the benefit of their bargain, having obtained the bargained for insurance at the

4   bargained for price."); *One Step Up, Ltd. v. Webster Bus. Credit Corp.,* 87 A.D.3d 1, 14 (N.Y.

5   App. Div. 2011) ("Moreover, defendant was in no way unjustly enriched. It merely received what

6   it was entitled to under the express contracts at issue, while plaintiff received the benefit of its

7   bargain."). The common question is especially evident here, as Plaintiffs claim that no purchaser

8   got the bargained-for product at the bargained-for price, because of the alleged premium. *Cf. In re*

9   *Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) (explaining that

10   "benefit of the bargain" losses are the difference between the price you paid and the value of what

11   you received) (citing *Kwikset v. Superior Court*, 51 Cal. 4th 310, 321-22 (2011)).[24]

12         There may be one immaterial difference among the laws in that seven states, including

13   Florida, have limited the remedy of unjust enrichment to situations where the victim has no other

14   remedy. Courts in those states have barred enrichment claims only where there is a contract

15   between the parties that would give rise to claims for breach of contract.[25] Here, there is no

16   contract. *Cf. Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014)

17   (explaining that the absence of privity prevents a plaintiff from alleging breach of contract in a

18   ---

[23] Instead, the Court merely relied upon a lengthy chart prepared by the defendant that also did not
19   contain any discussion. *See* Case No. 16-cv-1255, Dkt. 100-2, pp. 95-122.

20   [24] Alternatively, if this Court chose to include "did not receive benefit of the bargain" as an
independent element of the unjust enrichment claim, the Plaintiffs from California and Florida
21   would prove that element on behalf of class members in all states with such a requirement.

22   [25] *See, e.g., In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F.
Supp. 2d 1311, 1338 (S.D. Fla. 2013) (holding that Florida plaintiffs may pursue claims for unjust
enrichment and false advertising because there was not "an express contract between the parties
23   that precludes recovery"); *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at *6
(Del. Ch. 2009), *aff'd sub nom. Metcap Sec. LLC v. Pearl Sr. Care, Inc.*, 977 A.2d 899 (Del. 2009)
24   (holding that in Delaware, "[b]ecause there is no contract. . .[plaintiff] does not have an adequate
remedy at law"). *See also Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 542 (Ct.
25   App. 2002), *as corrected* (June 19, 2002) (holding that the doctrine of unjust enrichment does not
apply in Arizona where there is "a specific contract"). *Accord Porter v. Hu*, 116 Haw. 42, 54 (Ct.
26   App. 2007); *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996);
*Daugherty v. Sony Elecs., Inc.*, 2006 WL 197090, at *6 (Tenn. Ct. App. 2006); *Schroeder v.*
27   *Buchholz*, 622 N.W.2d 202, 207–08 (N.D. 2001).

28

1  food labeling lawsuit). Moreover, all Plaintiffs who fail to prove the elements of their consumer

2  law claim will have "no other remedy" and thus will be left with their unjust enrichment claims.

3  Likewise, if the Court concludes, based on the fact finder's determination as to the facts, that the

4  elements for the consumer claim in a particular state have not been proven, then there is "no other

5  remedy" for the class members in that state.

6           **2.**      **Nationwide Settlement Classes Are Still Permitted After**
7                      *Hyundai,* **Even Assuming That Opinion Remains Good Law.**

8        This Court may be concerned about the viability of multi-state settlement classes given the

9  uncertainty with regards to the forthcoming *en banc* decision in *Hyundai.* It need not have that

10  concern. *Hyundai* did not bar nationwide settlement classes; it reversed certification of the class

11  there only because of myriad and profound factual and legal differences among class members that

12  do not exist here. Even if the Ninth Circuit, sitting *en banc*, adopts the panel's reasoning, that

    decision will not bar certification of the settlement class here.

13        In *Hyundai*, the plaintiffs challenged allegedly fraudulent representations made by

14  hundreds of independent new and used car dealers across the country, in connection with 76

15  different models of cars. 881 F.3d at 704. The evidence showed wide variations among the

16  statements made by the dealers and among the true features of the car models, which had resulted

17  in district court denying certification of a California class. *Id.* at 695. Around the same time,

18  numerous other class actions were filed around the country alleging similar misconduct under their

19  own states' laws. *Id* at 697. In response, plaintiffs' counsel in the California action, where

20  certification had been denied, conspired with the defendant to settle out from under the plaintiffs

21  and counsel from other states by agreeing to a nationwide settlement class under California law.

22  *Id.* at 697-700. Although the plaintiffs and counsel from the other states objected, the district court

23  certified the nationwide settlement class, without making any new findings about commonality or

24  predominance, let alone why California law should apply to class members in all states when it

25  had previously held that it could not even apply uniformly to class members in California. *Id.* at

26  700. The objector plaintiffs from the other states appealed, and the Ninth Circuit reversed.

27        Notably, the panel opinion in *Hyundai* did not hold that a nationwide class can never be

28  certified. Rather, as it explained, the district court must consider "whether the consumer-protection

laws of the affected States vary in ***material*** ways." *Id.* at 702 (internal citations omitted) (emphasis added). While the district court must undertake a choice of law analysis and look to whether "common questions outweigh individual questions," *id.*, the panel reconfirmed that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 693 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

This case presents none of the problems that led the Ninth Circuit panel to reject the approval of a nationwide settlement class in *Hyundai*. Here, unlike *Hyundai*, the Court *did* certify a California class and found that there *was* allegedly uniform conduct by P&G (including uniform labels and testing procedures). *Cf. id.* There *was* a substantial risk of nationwide litigation in this case, because P&G had been sued three times by consumers from five different states, and plaintiffs from an additional thirteen states had retained the same counsel to challenge the same conduct. *Cf. id.* at 703. The parties to this lawsuit agreed not to settle the claims in New York, where litigation is still pending, avoiding pressure or incentive to settle this case at a low price. *Cf. id.* at 697. And Plaintiffs are not seeking to apply California law to class members in all states, but to apply the law of each state to the residents of that state; which is possible because the laws are substantively identical, and to the extent there are differences, the named plaintiffs from different states represent all permutations. *Cf. id.* at 692.[26]

### C.    The Proposed Notice Is Adequate.

The proposed notice plan and claim form comport with the procedural and substantive requirements of Rule 23, including the amendments scheduled to go into effect on December 1, 2018. Under Rule 23, due process requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-

---

[26] Nor is certification here inconsistent from the Ninth Circuit's earlier decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  That was another case involving myriad car dealers and individualized representations.  The defendant opposed certification and demonstrated material differences of fact and law, particularly regarding scienter, reliance, and the remedial structure.  *Id.* at 591. For the reasons above, those differences do not exist here. And even if a defendant *could* assert differing defenses to claims in various states—for example, asserting different limitations periods—P&G decided not to assert such defenses but instead to settle.

76 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort"). The Federal Rules require that this Court "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). *See also* Amended Rules, p. 9. The mechanics of the notice process are left to the discretion of the Court, subject only to the broad reasonableness standards imposed by due process. *See Rosenburg v. I.B.M.*, 2007 WL 128232 at *5 (N.D. Cal. 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement). The forthcoming amendments clarify that electronic means may be used. *See* Amended Rules, p. 10.

Notice is to be provided to the class as follows: (1) print publication in three major magazines designed to reach 90,000,000 readers; (2) online advertising designed to reach consumers of the Product, including targeted display advertising to followers of Charmin's Facebook page, to individuals in states where research identifies the greatest use of the Product, and to individuals who conduct searches of keywords, such as Freshmates; and (3) a nationwide press release. (Heffler Decl. at ¶¶ 23-32.) All of these notices will refer class members to the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and Class Counsel; the Settlement Agreement; the signed order of Preliminary Approval and the publicly filed motion papers and declarations in support thereof; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the publicly filed motion for final approval and Plaintiff's application for Attorneys' Fees, Costs and payments to the Class Representatives, with supporting declarations. (Id. at ¶ 34.)

The proposed notice plan is reasonable and comports with due process. As explained in the declaration from the proposed claim administrator, this multi-communication method is the best notice practicable and is reasonably designed to reach class members. (Id. at ¶ 36.) *See* 2018 Advisory Comm. Note, Amended Rules, p. 16 ("courts and counsel have begun to employ new

technology to make notice more effective"); *see also Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was mailed to class members and supplemented by published notice); *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, *7 (N.D. Cal. Mar. 26, 2014) (where direct individual notice not practical, "publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment"); *see also In re Netflix Privacy Litig.*, 2012 WL 2598819, *5 (N.D. Cal. 2012) (approving notice procedure that included emailing customers at last known email address, publication in *People* magazine, and advertising on Facebook). At least 85 percent of likely class members has been online within the last 30 days (Finegan Decl. at ¶ 23). The remaining class members will easily be reached through print notice in three popular magazines likely to reach class members. (Finegan Decl. at ¶ 24.) Direct notice to the class is not a reasonable method of notice, as the products are sold through third-party retailers, and none of the parties have records of purchaser identities. *Cf. Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1129 (9th Cir. 2017) (recognizing that Rule 23 "does not insist on actual notice to all class members;" and "courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process"); *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007) ("Because defendants do not have a list of potential class members, the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action").

Moreover, the proposed notices provide all the requisite information: they inform class members about the proposed settlement; their right to opt out or object; the need to file a claim; a summary of settlement benefits; the prospective request for attorneys' fees, costs and payments to the Class Representatives; and the fact that they will be bound by the judgment if they do not opt out. The notices also refer class members to the settlement website where they can obtain the long-form notice, which provides more details about the case and the settlement, the procedures for opting out or objecting, and methods to obtain additional information. The settlement website will also contain a copy of the full Settlement Agreement and will contain plaintiffs' motion for fees and costs when filed. (Finegan Decl. at ¶ 34.)

Settlement class members who seek benefits under the settlement need to fill out a simple Claim Form online. They also have the option to print copies and mail the Claim Form to the Claim Administrator. The claim form requires them to certify under the penalty of perjury (1) their name and address and (2) basic information about the Products purchased for which they are claiming a refund, including the quantity, the state and retailer where the Product was purchased, and that the purchases were not made for purposes of resale. (Gutride Decl. Ex. 1 § 4.3.) The claim form can be completed in a few minutes.

## IV.     DATES FOR THE FINAL APPROVAL PROCESS

Plaintiffs request that in connection with preliminary approval, this Court set a date for a final approval hearing to consider the fairness of the Settlement and to hear any comments from the Settlement Class Members, as well as dates for mailing and publishing Notice and deadlines for objections and opting out of the settlement class. Plaintiffs propose the following schedule:

| Item | Proposed Due Date |
| --- | --- |
| Initiate Notice | As set forth in Notice Plan |
| Motion for final approval; Plaintiffs' motion for attorneys' fees, costs and payments to the class representatives | 42 days before final approval hearing |
| Deadline for objections, requests to appear, and requests to opt out | 28 days before final approval hearing |
| Replies in support of final approval and motion for attorneys' fees, costs and payments to the Class Representatives; response to objections | 14 days before final approval hearing |
| Final approval hearing | March 28, 2019[27] |
| End of Claim Period | 30 days after final approval |

## V.     CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court grant preliminary approval to the proposed class action settlement.

---

[27] Assuming that preliminary approval is granted by mid-November, this allows approximately 2.5 months between initiation of notice and the objection deadline.

1    Dated: October 31, 2018                    Respectfully submitted,
                                                **GUTRIDE SAFIER LLP**

2                                               By: /s/ Adam Gutride
                                                Adam J. Gutride

3
                                                **TYCKO & ZAVAREEI LLP**
4                                               Hassan A. Zavareei

5                                               **SPANGENBERG SHIBLEY & LIBER LLP**
                                                Stuart E. Scott
6
                                                *Counsel for Plaintiffs*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT