1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9    JAMIE PETTIT, *et al.*,                    CASE NO: 15-cv-02150-RS

10        Plaintiffs,                           **CLASS ACTION**

11
              v.                                [~~PROPOSED~~] ORDER GRANTING
12                                              PRELIMINARY APPROVAL OF CLASS
     PROCTER & GAMBLE CO.,                      ACTION SETTLEMENT
13
              Defendant.                        **As Amended by the Court**
14

15
                                                DATE:  November 15, 2018
16                                              TIME:   1:30 p.m.
                                                CTRM:  3
17                                              JUDGE: Hon. Richard Seeborg

18

19

20

21

22

23

24

25

26

27

28

**RECITALS**

On April 6, 2015, Jamie Pettit filed a class action complaint against Defendant The Procter & Gamble Company ("P&G") in the Superior Court of the State of California, County of San Francisco, Case No. CGC-15-545175, which was removed by P&G to the United States District Court, Northern District of California on May 13, 2015 and assigned case number 3:15-cv-02150-RS.  Pettit challenges as false and misleading certain representations that P&G makes about its Charmin Freshmates Flushable Wipes product, and alleges in her complaint that P&G is liable for (a) violations of the California Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*, (b) false advertising in violation of California Business and Professions Code § 17500 *et seq.*, (c) fraud, deceit, and/or misrepresentation, (d) negligent misrepresentation, and (e) unfair, unlawful and deceptive trade practices in violation of California Business and Professions Code § 17200 *et seq.*

On July 10, 2015, Plaintiff Karla Ramcharitar filed a class action complaint against P&G in the United States District Court, Southern District of Ohio, Case No. 1:15-cv-00457-MRB. Ramcharitar filed an amended complaint, adding new plaintiffs Gloria Wiltrakis and Cheryl Senko, on January 8, 2016.  In their complaint, these plaintiffs make similar allegations as Ms. Pettit about the Charmin Freshmates Flushable Wipes and allege that P&G is liable for (a) breach of express warranty, (b) negligent design, (c) negligent misrepresentation, (d) failure to warn, (e) violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq.*, (f) unjust enrichment, (g) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, (h) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, § 805 Ill. Comp. Stat. § 505 (2007), (i) tortious breach of warranty, and (j) fraud.

On November 5, 2018, the three plaintiffs in the *Ramcharitar* action were added as named plaintiffs in an amended complaint before this Court, along with thirteen other individuals: Debra Jewell, Susan Hartzfel, Kennth Luke, Linda Feiges, Willie Perez, Dian Cotton, Marlena Hinkle,  Phyllis Jones, Glenn Katz, Eilene Shaffer, Charles Tippe, Sandra Flores, and Roxy Vance.

The seventeen plaintiffs ("Class Representatives") have moved the Court for preliminary

1    approval of a proposed class action settlement with P&G, the terms and conditions of which are

2    set forth in the Settlement Agreement filed with the Court on November 5, 2018 ("Settlement

3    Agreement").

4          This case concerns the marketing and labeling of Charmin Freshmates Flushable Wipes

5    and any other pre-moistened wipes sold under the Charmin brand name bearing the word

6    "flushable" on the package label (the "Product").  Plaintiffs allege that the Product is mislabeled

7    as "flushable," "septic safe," and "safe for sewer and septic systems" because the Product is not

8    suitable for flushing.  In particular, Plaintiffs allege that the Product is not appropriate for disposal

9    in the sewer system and that the Product is not likely to dissolve and disperse in a sufficiently

10   limited amount of time, which made them likely to clog toilets, drainlines, sewer pipes, and

11   sewage treatment facilities.

12         Plaintiffs contend that, by marketing the wipes as "flushable," "septic safe," and "safe for

13   sewer and septic systems," P&G was able to sell the Product at a higher price than it would have

14   been sold without the misstatements.  Plaintiffs seek to recover, on behalf of a class of all

15   purchasers (except for purchases in the State of New York and re-sellers), the dollar amount of

16   the price "premium" that is attributable to the alleged misrepresentations.  Plaintiffs assert that

17   approximately 42 million packages of the Product have been sold nationwide (except in New

18   York) during the class period at an average retail price of $3.99.  Plaintiffs believe that, if they

19   were successful at trial on all of their claims, they could win damages or restitution of up to

20   approximately 9.19 percent of the purchase price, which they assert would total approximately

21   $15.5 million for all members of the Settlement Class.

22         P&G denies that there is any factual or legal basis for Plaintiffs' allegations.  P&G

23   contends that the labeling of the Product is truthful and non-misleading.  It also denies that

24   purchasers paid a "premium" for the Product as the result of any misrepresentations.  P&G

25   therefore denies any liability.  P&G also denies that Plaintiffs or any other members of the

26   settlement class have suffered injury or are entitled to monetary or other relief.  P&G also denies

27   that this case was properly certified as a class action, except for purposes of settlement.

28         Substantial discovery was taken by the parties.  For example, P&G produced over 112,000

pages of documents and three 30(b)(6) witnesses for depositions.  Plaintiff Pettit responded to discovery requests, had her home plumbing inspected, and attended a deposition.  Third parties were subpoenaed.  The parties each retained experts, three of whom were deposed.  Further, in 2014, Gutride Safier LLP (one of the law firms serving as counsel for Plaintiffs here) represented the plaintiff in another matter against P&G and another company involving similar flushability claims made in connection with the marketing of the Kandoo flushable wipes product, which P&G licensed to its co-defendant in 2009.  In connection with that case, Gutride Safier LLP reviewed documents produced by P&G relating to general flushability issues and P&G's relationship with the Kandoo product and conducted depositions of five of P&G's employees bearing on the same issues.

The settlement here was negotiated with the assistance of Robert A. Meyer of JAMS.

The terms of the settlement are summarized in the proposed Long Form Notice to Settlement Class Members, which is attached as Exhibit B1 to the Settlement Agreement.  In brief, P&G has changed the formulation of the Product.  P&G has agreed to modify its labeling on future newly packaged Product to include a statement that "Your satisfaction is guaranteed. For details of our refund program go to our website at [URL]."  P&G has also agreed to modify the packaging on future newly packaged Product to include the statement: "Use only in well-maintained plumbing systems."  P&G further has agreed to submit to stricter testing protocols recently announced by the industry association INDA.  These changes will be incorporated in a court injunction.  In addition, all Settlement Class Members may submit a claim for a refund of $0.60 per package purchased, up to a total of $30 per household.  Valid claims will be paid even without proof of purchase, but only up to a total of $4.20 per household.

As part of the settlement, Plaintiffs' Counsel may apply to this Court to award them up to $2,150,000 from P&G to pay their attorneys' fees, costs, and expenses.  They may also apply to this Court for payments to the Class Representatives from P&G as follows: for Pettit, up to $5,000; for Ramcharitar, Wiltrakis, and Senko, up to $3,000 each; for Jewell, Hartzfel, Luke, Feiges, Perez, Cotton, Hinkle, Jones, Katz, Shaffer, Tippe, Flores, and Vance, up to $1,000 each. Such amounts must be approved by the Court, and the Court will defer any ruling on the

1    appropriateness of such awards until the final approval hearing.

2           Having considered all matters submitted to it at the hearing on the motion and otherwise,

3    and good cause appearing therefore, the Court grants preliminary approval and hereby finds and

4    concludes as follows:

5           1.      The capitalized terms used in this Order shall have the same meaning as defined

6    in the Settlement Agreement except as otherwise expressly provided.

7           2.      The Court preliminarily approves the Settlement Agreement as within the range

8    of possible final approval, and as meriting submission to the Settlement Class for its

9    consideration.  The Parties' Agreement was reached as a result of arm's length negotiations

10   between the Parties and their counsel.  Additionally, before entering into the Agreement,

11   Plaintiffs' Counsel reviewed hundreds of thousands of pages of documents produced by P&G,

12   took depositions of P&G's employees, requested and received written discovery responses from

13   P&G and several third parties, and conducted expert discovery.  Thus, Plaintiffs and their counsel

14   had sufficient information to evaluate the strengths and weaknesses of the case and to conduct

15   informed settlement discussions.

16          3.      For purposes of the settlement only, the Court preliminarily certifies the

17   Settlement Class, which consists of all Persons who purchased the Product in the United States

18   between April 6, 2011 and the date of Preliminary Approval, excluding purchases made in the

19   State of New York and purchases made for purposes of resale.  Excluded Persons are (1)

20   Honorable Richard Seeborg, Honorable Sallie Kim (Mag.), Honorable Timothy S. Black, and any

21   member of their immediate families; (2) any government entity; (3) P&G; (4) any entity in which

22   P&G has a controlling interest; (5) any of P&G's subsidiaries, parents, affiliates, and officers,

23   directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who

24   timely excludes themselves from the Settlement Class.

25          4.      The Court preliminarily finds and concludes, solely for purposes of considering

26   this settlement, that the requirements of Rule 23 of the Federal Rules of Civil Procedure are

27   conditionally satisfied for certification of the Settlement Class to pursue claims for unjust

28   enrichment and under the consumer protection laws of the forty-nine states (other than New

York) and the District of Columbia (collectively, "states").

5.      Pursuant to the stipulation filed on November 5, 2018, and subsequently entered as a Court order, *see* Dkt. No. 121, the Court further notes that Ms. Pettit filed an amended complaint, *see* Dkt. 119, which sets forth causes of action for a nationwide (except for purchases in New York) class; that P&G did not oppose Plaintiffs' request to certify a nationwide (except for purchases in New York) settlement class; and that in the event final approval of the settlement agreement is denied, or a mandate is issued reversing an award of final approval, or the Settlement Agreement is otherwise terminated, the claims in this case for purchases outside of California will be dismissed without prejudice.

6.      The Court conditionally designates the law firm of Gutride Safier LLP, Tycko & Zavareei LLP, and Spanenberg Shibley and Liber LLP as Settlement Class Counsel and Jamie Pettit, Karla Ramcharitar, Gloria Wiltrakis, Cheryl Senko Debra Jewell, Susan Hartzfel, Kennth Luke, Linda Feiges, Willie Perez, Dian Cotton, Marlena Hinkle, Phyllis Jones, Glenn Katz, Eilene Shaffer, Charles Tippe, Sandra Flores, and Roxy Vance as Class Representatives for purposes of this settlement.  The Court designates, and approves, Heffler Claims Group to serve as Claim Administrator.

7.      Since the Settlement Agreement is within the range of reasonableness and possible final approval, notice shall be provided to the Settlement Class pursuant to the Settlement Agreement as set forth in the Notice Plan.  The Claim Administrator shall provide notice in compliance with 28 U.S.C. § 1715.  As set forth in the Notice Plan, the Claim Administrator shall do the following:

a.      At least ten (10) business days prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel; the Settlement Agreement; the signed order of Preliminary Approval and publicly filed motion papers and declarations in support thereof; a downloadable and online version of the Claim Form; and a

downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class. The Claim Administrator shall add to the Settlement Website all other material filings by the parties or the Court regarding the settlement, including Plaintiffs' application for attorneys' fees, costs, expenses and/or payments to the Class Representatives, the motion for final approval, and any orders with respect to such applications and motions.

b.    The Claim Administrator shall cause the Published Notice to be published in accordance with the Notice Plan as soon as practicable after the Notice Date.

c.    The Claim Administrator shall initiate the process of providing the Online Notice on websites as set forth in the Notice Plan, so that overall notice of the Settlement (including the Online Notice and the Publication Notice) is reasonably calculated to apprise the Settlement Class Members of the Settlement.

d.    The Claim Administrator shall issue the Published Notice as a press release, as further described in the Notice Plan.

e.    The Claim Administrator shall set up the toll-free number as further described in the Notice Plan.

8.    A Final Approval Hearing shall be held before this Court at 1:30 p.m. on March 28, 2019, at the United States District Court for the Northern District of California, Courtroom 3 - 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, to address: (a) whether the proposed settlement should be finally approved as fair, reasonable, and adequate, and whether the Final Approval Order should be entered, and (b) whether Class Counsel's application for attorneys' fees, costs, expenses and payments to the Class Representatives should be approved.

9.    The Court approves, as to form and content, Notices that are substantially similar to the forms attached as Exhibits B1 to B3 to the Settlement Agreement, as well as a Claim Form that is substantially similar to the form attached as Exhibit 1 to that agreement. The Parties shall have discretion to jointly make non-material minor revisions to the claim form and Notices before publishing. Responsibility for settlement administration, including, but not limited to, notice and related procedures, shall be performed by the Claim Administrator, subject

to the oversight of the Parties and this Court as described in the Settlement Agreement.

10.   The Court finds that the Parties' plan for providing notice to the Settlement Class is reasonably calculated to provide notice to the Settlement Class of the pendency of the actions, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval hearing, and complies with the requirements of the California and United States Constitutions and Rule 23 of the Federal Rules of Civil Procedure.  The Parties and the Claim Administrator shall comply with the notice plan as set forth in the Settlement Agreement.

11.   Any member of the Settlement Class wishing to make a claim must submit a Claim Form to the Claim Administrator, pursuant to the instructions set forth in the Long Form Notice.  The request must be submitted online by no later than February 28, 2019 or if mailed, it must be received by the Claim Administrator (not just postmarked) by no later than February 28, 2019.

12.   Any member of the Settlement Class who desires to be excluded from the Settlement Class, and therefore not be bound by the terms of the Settlement Agreement, must submit a request for exclusion to the Claim Administrator, pursuant to the instructions set forth in the Long Form Notice.  The request must be submitted online by no later than February 28, 2019 or if mailed, it must be received by the Claim Administrator (not just postmarked) by no later than February 28, 2019.  No one shall be permitted to exercise any exclusion rights on behalf of any other Person, whether as an agent or representative of another or otherwise, except upon proof of a legal power of attorney, conservatorship, trusteeship, or other legal authorization, and no one may exclude other Persons within the Settlement Class as a group, class, or in the aggregate.

13.   No later than three (3) days after the Opt Out Deadline, the Claim Administrator shall prepare and deliver to the Parties a list of the names of the Persons who, pursuant to the Long Form Notice, have excluded themselves from the Settlement Class in a valid and timely manner.  Plaintiffs' Counsel shall file that list with the Court no later than fourteen (14) days prior to Final Approval.  The Court retains jurisdiction to resolve any disputed exclusion requests.

14.   Any member of the Settlement Class who elects to be excluded shall not receive

any benefits of the settlement, shall not be bound by the terms of the Settlement Agreement, and shall have no standing to object to the settlement or intervene in the litigation.  If the settlement is granted final approval, all Settlement Class Members who do not timely submit a valid request for exclusion will be bound by the order of final approval and final judgment, and enjoined from bringing or prosecuting any action relating to the released claims.

15.    Any Settlement Class Member who does not submit a valid and timely request for exclusion may submit an objection to the Settlement Agreement.  The written objection must satisfy the requirements described in the Long Form Notice.  An objection must be electronically filed or received (and not just postmarked) no later than February 28, 2019, or it will be rejected.

16.    Any Settlement Class Member shall have the right to appear and be heard at the Final Approval hearing, either personally or through an attorney retained at the Settlement Class Member's own expense, provided they file a request to be heard and/or objection as described in the Long Form Notice.  However, if the Settlement Class Member wishes to object to the settlement at the Final Approval hearing (either personally or through counsel), the Settlement Class Member must submit a written objection as set forth in the prior paragraph of this Order.

17.    Immediately upon receipt of any objection, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties.  No later than March 14, 2019, Plaintiffs' Counsel shall file all such objections and supporting documentation with the Court.

18.    Plaintiffs shall file their motions for Final Approval and for any award of attorneys' fees, costs, expenses, and class representative payments no later than January 24, 2019, and the reply in support of that motion and responses to any objections and requests to intervene no later than March 14, 2019.  Those motions and all supporting documentation shall simultaneously be posted to the Settlement Website.

19.    No later than March 14, 2019, the Claim Administrator shall provide a declaration to the Court regarding the total number and dollar amount of claims received.

20.    The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class Members.  The Final Approval Hearing may,

1   from time to time and without further notice to the Settlement Class Members, be continued by

2   Order of the Court.

3       **IT IS SO ORDERED** this 26ᵗʰ day of November, 2018.

4

5                                                   _____
                                                    HON. RICHARD SEEBORG
6                                                   UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9