1

2

3

4

5

6

7

8

9

10

11             UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13   JAMIE PETTIT, *et al.*,                CASE NO: 15-cv-02150-RS

14      Plaintiffs,                         **CLASS ACTION**

15          v.                              ~~[PROPOSED]~~ ORDER GRANTING FINAL
16                                          APPROVAL OF CLASS ACTION
17   PROCTER & GAMBLE CO.,                  SETTLEMENT AND JUDGMENT

        Defendant.
18
                                           DATE:
19                                         TIME:
                                           CTRM: 3
20                                         JUDGE:   Hon. Richard Seeborg

21
                                           **As Amended by the Court**
22

23

24

25

26

27

28

On April 6, 2015, Jamie Pettit filed a class action complaint against Defendant The Procter & Gamble Company ("P&G") in the Superior Court of the State of California, County of San Francisco, Case No. CGC-15-545175, which was removed to the United States District Court, Northern District of California, by P&G on May 13, 2015 and assigned case number 3:15-cv-02150-RS.  Pettit alleges in her complaint that P&G marketed and sold its Charmin Freshmates Flushable Wipes with the representation that they were "flushable," "septic safe," and "safe for sewer and septic systems," although she alleges the wipes are not suitable for disposal by flushing down a toilet, are not regarded as flushable by municipal sewage system operators, do not disperse upon flushing, and routinely damage or clog plumbing pipes, septic systems, and sewage lines and pumps.  Pettit alleges that P&G is liable for (a) violations of the California Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq.*, (b) false advertising in violation of California Business and Professions Code § 17500 *et seq.*, (c) fraud, deceit, and/or misrepresentation, (d) negligent misrepresentation, and (e) unfair, unlawful and deceptive trade practices in violation of California Business and Professions Code § 17200 *et seq.*

On July 10, 2015, Plaintiff Karla Ramcharitar filed a class action complaint against P&G in the United States District Court, Southern District of Ohio, Case No. 1:15-cv-00457-MRB.  Ramcharitar filed an amended complaint, adding new plaintiffs Gloria Wiltrakis and Cheryl Senko, on January 8, 2016.  In their complaint, these plaintiffs make similar allegations as Pettit about the Charmin Freshmates Flushable Wipes and allege that P&G is liable for (a) breach of express warranty, (b) negligent design, (c) negligent misrepresentation, (d) failure to warn, (e) violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201 *et seq.*, (f) unjust enrichment, (g) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, (h) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, § 805 Ill. Comp. Stat. § 505 (2007), (i) tortious breach of warranty, and (j) fraud.

On December 6, 2018, the *Ramcharitar* action was stayed pending resolution of this settlement.  On November 5, 2018, via the agreed filing of an amended complaint, the three Plaintiffs from the *Ramcharitar* action were added as named Plaintiffs to the *Pettit* case before this Court, along with thirteen other individuals: Debra Jewell, Susan Hartzfel, Kennth Luke,

Linda Feiges, Willie Perez, Dian Cotton, Marlena Hinkle, Phyllis Jones, Glenn Katz, Eilene Shaffer, Charles Tippe, Sandra Flores, and Roxy Vance.

P&G denies that there is any factual or legal basis for Plaintiffs' allegations. It contends that the labeling of the Charmin Freshmates product is truthful and non-misleading, and that purchasers did not pay a "premium" for the wipes as the result of any misrepresentations. P&G therefore denies any liability. P&G also denies that Plaintiffs or any other members of the settlement class have suffered injury or are entitled to monetary or other relief. P&G denies that this case should have been certified as a class action, except for purposes of settlement.

On November 26, 2018, this Court granted preliminary approval of a proposed settlement between the parties. In the Preliminary Approval Order, *see* Dkt. No. 129, the Court provisionally certified a Settlement Class of all Persons, other than Excluded Persons, who purchased the Product in the United States between April 6, 2011 and November 26, 2018, excluding purchases in the State of New York and purchases for purposes of resale. "Products" means Charmin Freshmates Flushable Wipes and any other pre-moistened wipes sold under the Charmin brand name bearing the word "flushable" on the package label. The Court also approved the procedures for giving notice and the forms of notice. Additionally, in the Preliminary Approval Order, the Court concluded that the parties' proposed settlement, as set forth in the Settlement Agreement, was within the range of possible final approval.

Now pending before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Class Representative Payments. In accordance with the Preliminary Approval Order and the Settlement Agreement, on March 28, 2019, the Court held a duly noticed Fairness Hearing for purposes of: (a) determining the fairness, adequacy, and reasonableness of the settlement; and (b) ruling upon an application by Class Counsel for an award of fees, costs, and expenses.

The parties and the claim administrator have submitted evidence, which the Court accepts, showing the following. Approximately 101 million online impressions of the notice were displayed on a variety of websites (both mobile and desktop) targeted at likely members of the Settlement Class. These notices appeared on pre-vetted websites and on the social media

platforms Facebook and Instagram.  Notice also was published in the January 7, 2019 issue of *People Magazine*, the February 2019 issue of *Good Housekeeping*, and the February 2019 issue of *National Geographic*. These print publications have a combined circulation of over 10 million and a combined readership of 90 million.  A press release was issued in both English and Spanish through the PR Newswire network, and articles about the settlement appeared in at least 294 publications.  All of the online notices linked to, and the printed notices referred to, the Settlement Website, which contains a detailed class notice, including the procedures for class members to exclude themselves or object to the settlement, as well as a copy of the Settlement Agreement and motion papers filed in connection with the settlement.

Approximately 180,000 timely claims were received after excluding claims for purchases of the Product in the State of New York, which are not covered by this settlement.  The claims administrator is validating the claims that were received.

A total of 58 persons filed timely requests to opt out of the Settlement Class.

No class members filed objections to the settlement.

Having considered all matters submitted to it at the hearing on the motion and otherwise, including the complete record of this action, and good cause appearing therefore, the Court hereby grants the Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Class Representative Payments, and finds and concludes as follows:

1.    The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2.    The Court has jurisdiction over these cases and over all claims raised therein and all Parties thereto.

**The Settlement Class**

3.    The Court reaffirms its findings at preliminary approval that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for certification of the Settlement Class for settlement purposes because: Settlement Class Members are ascertainable and are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND JUDGMENT

of the claims and defenses of the Settlement Class they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class they represent; common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter.  The Court additionally finds, for the reasons set forth in the motions for preliminary and final approval, that despite any differences among the laws of the various states, common issues of law and fact predominate, making certification of a nationwide (except New York) class appropriate under *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018).[1]  In particular, the identical challenged marketing and labeling was provided to all class members; the various states require similar elements of proof with respect to the asserted claims in the complaints and common issues under those laws predominate; to the extent there are differences among the states, the plaintiffs, who are from seventeen different states,[2] have demonstrated that similarly situated states can be combined into subclasses and there exist named plaintiffs who can prove all elements of all claims for all variations of the state laws.

4.    For purposes of the settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Settlement Class: All Persons who purchased the Product in the United States between April 6, 2011 and November 26, 2018, excluding purchases in the State of New York and purchases for purposes of resale.

---

[1] While the panel concluded in *Hyundai* that district courts must conduct "a rigorous predominance analysis under Rule 23(b)(3) to determine whether variations in state consumer protection laws" permit or preclude certification of a nationwide class, even in the settlement context, that holding is not currently precedential because the Ninth Circuit granted en banc review of the panel opinion.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 897 F.3d 1003, 1007 (9th Cir. 2018).  The Court nonetheless concludes that analysis is satisfied here for the reasons that follow.

[2] The states of residence are as follows: Alabama (Jewell), Arizona (Hartzfeld), California (Pettit) Colorado (Luke), Florida (Ramcharitar), Illinois (Senko), Maryland (Feiges), Massachusetts (Perez), Michigan (Cotton), Missouri (Hinkle), Mississippi (Jones), New Jersey (Katz), Ohio (Wiltrakis), Pennsylvania (Shaffer), Rhode Island (Tippe), Texas (Flores), and West Virginia (Vance).

4

5.      Excluded from the class are (1) Honorable Richard Seeborg, Honorable Sallie Kim (Mag.), Honorable Timothy S. Black, Robert A. Meyer, and any member of their immediate families; (2) any government entity; (3) P&G; (4) any entity in which P&G has a controlling interest; (5) any of P&G's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely excluded themselves from the Settlement Class.  The persons listed in Exhibit A to this Order timely submitted requests to exclude themselves and shall be excluded from the settlement class.

6.      For the purpose of this settlement, the Court hereby finally certifies Plaintiffs Jamie Pettit, Karla Ramcharitar, Gloria Wiltraki, Cheryl Senko, Debra Jewell, Susan Hartzfel, Kennth Luke, Linda Feiges, Willie Perez, Dian Cotton, Marlena Hinkle, Phyllis Jones, Glenn Katz, Eilene Shaffer, Charles Tippe, Sandra Flores, and Roxy Vance as Class Representatives, and Gutride Safier LLP; Spangenberg, Shibley & Liber, LLP; and Tycko & Zavareei LLP as Settlement Class Counsel.

**Notice Plan**

7.      The Parties complied in all material respects with the Notice Plan set forth in the Settlement Agreement. The Notice Plan provided notice to class members by publication, rather than directly, but this is appropriate here where the evidence is undisputed that the parties do not know the names or contact information for class members, as the purchases were made at retail and P&G is a wholesaler.  Under these circumstances, individualized notice was not required or reasonably practicable. *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (recognizing that Rule 23 "does not insist on actual notice to all class members;" and "courts have routinely held that notice by publication in a periodical, on a website, or even at an appropriate physical location is sufficient to satisfy due process"); *In re Toys R Us-Delaware, Inc. FACTA Litigation*, 295 F.R.D. 438, 449 (C.D. Cal. 2014) ("When the court certifies a nationwide class of persons whose addresses are unknown, notice by publication is reasonable."). Accordingly, the Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class of the

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND JUDGMENT

1    pendency of the litigation; the existence and terms of the Settlement Agreement; their rights to

2    make claims, exclude themselves, or object; and the matters to be decided at the Final Approval

3    Hearing. The Court also finds, based on the evidence described above, that the notice plan

4    reached at least 72% of the settlement class members an estimated average of 2.6 times each.

5    Dkt. 130-4, Finegan Decl. ¶ 4. This Notice Plan satisfied the requirements of the United States

6    and California Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other

7    applicable law. *See, e.g., Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL

8    12124432, at *3 (C.D. Cal. May 7, 2013) (approving a notice plan reaching 77%); *In re:*

9    *Whirlpool Corp. Front–loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL

10   5338012, at *9 (N.D. Ohio Sept. 23, 2016) (approving notice plan reaching approximately 77.5

11   percent of Class Members); *see also Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB,

12   2015 WL 758094, at *3 (N.D. Cal. Feb. 20, 2015) (approving similar publication notice plan in

13   class action regarding grocery store item); *Arnold v. Fitflop USA, LLC*, No. 11-CV-0973 W KSC,

14   2014 WL 1670133, at *5 (S.D. Cal. Apr. 28, 2014) (same for class action regarding shoes).

15         8.      The Court has determined that full opportunity has been given to the members of the

16   Settlement Class to exclude themselves from the settlement, object to the terms of the settlement

17   or to Class Counsel's request for attorneys' fees, costs, and expenses and for payments to the

18   Class Representatives, and otherwise participate in the Final Approval Hearing held on March 28,

19   2019.  The Court notes that no Class Member made any submissions or appeared at the final

20   approval hearing for the purpose of objecting to the settlement. Out of an estimated 3.9 million

21   class members, there were 58 opt-outs and no objections. Dkt. # 130-4, Finegan Decl., ¶ 5 n. 3;

22   Dkt. # 132-2, Shaffer Decl. ¶¶ 14-15. In comparison, more than 180,000 timely claims were

23   received, according to the report of the Settlement Administrator. Id. ¶ 16. While the Settlement

24   Administrator is still validating the claims received and compiling the precise number of valid

25   claims, the number of claims received equates to a claims rate of 4.6%, which exceeds the rate in

26

27

28

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND JUDGMENT

comparable settlements.[3] *See Churchill Village, LLC v. General Electric,* 361 F.3d 566, 577 (9th Cir. 2004) (explaining that a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) (holding "the indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *see also, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (stating that, "[i]n an analysis of settlements where notice relied on media notice exclusively, the claims rate ranged between 0.002% and 9.378%, ***with a median rate of 0.023%***") (emphasis added).

**Attorneys' Fees and Costs**

9.     Class counsel requests a fee award of $2,150,000 in attorneys' fees and costs, to be paid directly by P&G. P&G does not oppose the fee request. The record is undisputed that the settlement negotiation was overseen by an experienced mediator and that no discussion of fees began until after all other terms of the settlement had been agreed. *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2017 WL 1047834, at *4 (N.D. Cal., Mar. 17, 2017 ("Volkswagen's agreement not to oppose the application does not evidence collusion and was not obtained by Class Counsel to Class Members' detriment."); *G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"). Thus, the Court finds that the negotiations about fees, costs, and payments to the Class Representatives could not have had any negative impact on the benefits made available to class members.

---

[3] Class counsel has submitted evidence of the claims rates in similar, small-dollar product labeling cases in this District; in those cases, the rate of claims was less than one percent and 2.8%. Dkt. # 130-1, Ex. 1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    10.    This Court is required to analyze an attorneys' fee request based on either (1) the

"lodestar" method or (2) a percentage of the total benefit made available to the settlement class,

including costs, fees, and injunctive relief.  *See e.g.*, *Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI,

2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-07-0474

DLB, 2011 WL 10483569, at *11-12 (E.D. Cal. Sept. 2, 2011); *Browning v. Yahoo! Inc.*, No.

C04-01463 HRL, 2007 WL 4105971, at *13-14 (N.D. Cal. Nov. 16, 2007). It is not appropriate to

base attorneys' fees based only on the amount paid to Class Members who submitted claims. *See*

*Williams v. MGM-Pathe Commc'ns, Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that

the district court abused its discretion by basing the fee on the class members' claims against the

fund rather than on a percentage of the entire fund or on the lodestar."); *accord Ellsworth v. U.S.*

*Bank, N.A.,* 2015 WL 12952698, at *4 (N.D. Cal. Sept. 24, 2015) ("precedent requires courts to

award class counsel fees based on the total benefits being made available to class members rather

than the actual amount that is ultimately claimed") (emphasis added); *Miller v. Ghirardelli*

*Chocolate Co.,* 2015 WL 758094, at *5 (N.D. Cal. Feb. 20, 2015) (same); *Miller v. Sw. Airlines*

*Co.,* 2014 WL 11369764, at *2 (N.D. Cal. Mar. 21, 2014) (same). The Court concludes that the

lodestar approach is appropriate for this case, particularly since the primary form of relief is

injunctive. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) ("The

"lodestar method" is appropriate in class actions where the relief sought and obtained is not easily

monetized, ensuring compensation for counsel who undertake socially beneficial litigation.").

    11.    Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by

multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate."

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*,

822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the

number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly

rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in

original) (internal citation omitted) (quoting *Perdue v/ Kenny A. ex rel. Winn*, 559 U.S. 542, 551

(2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by

applying a positive or negative "multiplier to take into account a variety of other factors,

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND JUDGMENT

including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Id.*; *see also Serrano v. Priest ("Serrano III")*, 20 Cal. 3d 25, 48-49 (1977); *Ramos v. Countrywide Home Loans, Inc*. 82 Cal. App. 4th 615, 622 (2000); *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the public interest). The Court should take into account the value of injunctive relief when assessing fees under the lodestar approach, but need not determine a specific monetary value associated with that relief. *See Hohenberg v. Drey (In re Ferrero Litig.)*, 583 F. App'x 665, 668 (9th Cir. 2014) ("Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation . . . the injunctive relief in this case is meaningful and consistent with the relief requested in plaintiffs' complaint. . . The district court did not abuse its discretion in approving a settlement that compensated counsel under the lodestar method for procuring such relief."); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924 (9th Cir. 2014) *vacated on other grounds*, 772 F.3d 608 (9th Cir. 2014) ("[W]e have never required a district court to assign a monetary value to purely injunctive relief. To the contrary, we have stated that courts cannot 'judge with confidence the value of the terms of a settlement agreement, especially one in which, as here, the settlement provides for injunctive relief.'"); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (a district court still "should consider the value of the injunctive relief as a 'relevant circumstance'" in its fee determination).

12.    Class Counsel has provided detailed declarations showing that it incurred a lodestar of $2,574,041.83.  Having overseen this litigation for two years, the Court finds that the hours claimed were reasonably worked and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience who appear in this Court.  The Court also finds that Plaintiffs' counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes at, and risks of proceeding to, trial.

13.    Class counsel requests a fee award of $1,888,388.89 ($2,150,000 less costs and

expenses of $261,611.11, discussed in the next paragraph) which equals approximately 73% of its

lodestar.  Thus, far from any "upward" multiplier, Class Counsel's requested fee actually results

in a "negative" (more accurately, a "fractional") multiplier of 0.73. The fact that Plaintiffs'

counsel are seeking substantially less in fees than they reasonably incurred further demonstrates

the reasonableness of the fee award. *See, e.g., Schuchardt v. Law Office of Rory W. Clark*, 314

F.R.D. 673, 690-91 (N.D. Cal. 2016) (holding fractional lodestar multiplier to be indication of

reasonableness of fee request); *Johnson v. Triple Leaf Tea Inc.*, at *6 (N.D. Cal. Nov. 16, 2015)

(finding where "Class Counsel's lodestar exceeded the negotiated award" to be "well within the

range courts have allowed in the Ninth Circuit"); *Lusby v. GameStop Inc.*, No. C12-03783 HRL,

2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) ("Class Counsel's lodestar . . . result[s] in

a negative multiplier of approximately .54. This is below the range found reasonable by other

courts in California."); *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7

(N.D. Cal. Mar. 6, 2014) ("Plaintiffs' requested fee award is approximately 65% of the lodestar,

which means that the requested fee award results in a so-called negative multiplier, suggesting

that the percentage of the fund is reasonable and fair."); *Walsh v. Kindred Healthcare*, No. C 11-

00050 JSW, 2013 WL 6623224, at *3 (N.D. Cal. Dec. 16, 2013) ("The Court concludes that, on

the facts of this case, the lodestar is reasonable, especially in light of the fact that Settlement Class

Counsel have applied a negative multiplier, and seek an award that is less than their

base lodestar."); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 WL

4755371, at *1 (N.D. Cal. Oct. 4, 2012) ("Class Counsel do not seek a multiplier on

their lodestar, and in fact the requested fee is a negative multiplier (-.79). The Court finds that this

award is appropriate here."); *Lymburner v. U.S. Fin. Funding, Inc.*, No. C-08-00325 EDL, 2012

WL 398816, at *6 (N.D. Cal. Feb. 7, 2012) ("[T]he negative multiplier in this case supports the

reasonableness of the fee request."); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW,

2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("Even if the court accepted the

unadjusted lodestar from plaintiffs' counsel ($922,884.75), the correlating multiplier of 0.74

would still reflect a negative multiplier, further suggesting that the requested percentage based fee

is fair and reasonable.").[4]

14.   Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement of $261,611.11 in litigation expenses and provide records that document their claim. (Gutride Decl. Ex. 2; Zavareei Decl. Ex. 1; Scott Decl. Ex. A.) The costs will be paid separately from amounts paid to class members who made valid claims and will not in any way reduce what is paid to them. No objection has been made to any cost item or amount.  Accordingly, the Court finds that these submissions support an award $261,611.11 in costs.

**Class Representative Payments**

15.   The district court must evaluate named plaintiffs' payments individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v.*

---

[4] The Court is not required to perform a percentage based cross-check and finds it inappropriate to do so here as the value of a permanent injunction requiring a label change is difficult to value monetarily.  *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) (holding that if "classwide benefits are not easily monetized, a cross-check is entirely discretionary," and the district court may make its award based entirely on the lodestar).

*Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013). Here, the Plaintiffs came forward to represent the interests of millions of others, with very little personally to gain, as their individual alleged damages were very small. Plaintiff Jamie Pettit was deposed and had her home plumbing inspected, compiled documents, and answered interrogatories in response to discovery requests, regularly corresponded with counsel telephonically and by email, and took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs. And she is signing a broader release than the rest of the class, including releasing her claims for plumbing damage. Gutride Decl. ¶ 44. Thus, the Court approves a $5,000 award for Ms. Pettit.

16.    Karla Ramcharitar, Gloria Wiltrakis, and Cheryl Senko were responsible for filing the Ramcharitar action, and each alleges that they incurred expensive home repairs as a result of using the Wipes. They took the substantial risk of litigation which, at a minimum, involves a risk of losing and paying the other side's costs, and are signing a broader release than the rest of the class, including releasing their claims for plumbing damage. This Court approves a $3,000 award for these three Plaintiffs.

17.    Many of the remaining Plaintiffs allege they incurred expensive home repairs as a result of using the Wipes. All are signing a broader release than the rest of the class, including releasing their claims for plumbing damage. This Court approves a $1,000 award for Debra Jewell, Susan Hartzfel, Kenneth Luke, Linda Feiges, Willie Perez, Dian Cotton, Marlena Hinkle, Phyllis Jones, Glenn Katz, Eilene Shaffer, Charles Tippe, Sandra Flores, and Roxy Vance.

**Final Approval of the Settlement**

18.    The Court finds that the settlement is in all respects fair, reasonable, and adequate. The Court therefore finally approves the settlement for all the reasons set forth in the Motion for Final Approval including, but not limited to, the fact that the Settlement Agreement was the product of informed, arms-length negotiations between competent, able counsel and conducted with the oversight and involvement of an independent, well respected, and experienced mediator; the record was sufficiently developed and complete through meaningful discovery and motion proceedings to have enabled counsel for the Parties to have adequately evaluated and considered

the strengths and weaknesses of their respective positions; the cases involved disputed claims, and these disputes underscore the uncertainty and risks of the outcome in this matter; the settlement provides meaningful remedial and monetary benefits for the disputed claims; and the Parties were represented by highly qualified counsel who, throughout this case, vigorously and adequately represented their respective parties' interests.

19.   The Settlement is in the best interests of the Settlement Class in light of the degree of recovery obtained in relation to the risks faced by the Settlement Class in litigating the class claims.  The relief provided to the Settlement Class Members under the Settlement Agreement is appropriate as to the individual members of the Settlement Class and to the Settlement Class as a whole.  All requirements of statute, rule, and Constitution necessary to effectuate the settlement have been met and satisfied.  The Parties shall continue to effectuate the Settlement Agreement in accordance with its terms.

20.   P&G is enjoined as follows for two years from the Effective Date, as defined in the Settlement Agreement:

> (a)     On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to include a statement that "Your satisfaction is guaranteed.  For details of our refund program go to our website at www._____.com/_____."  P&G will provide details regarding the satisfaction guarantee on the Charmin website, including reasonable purchase price refunds to consumers who are dissatisfied with the product;

> (b)     On or before 90 days after the Effective Date, P&G will modify the packaging of the Product to include the statement: "Use only in well-maintained plumbing systems";

> (c)     As of the Effective Date, the Product will comply with current and future versions of the INDA Guidelines, including the slosh box test, provided P&G is a member of INDA and the organization maintains the same purpose and mission, with a similar membership composition, as of the date of the Agreement;

> (d)     The Product marketed by P&G on or after June 13, 2018, will comply with the May 2018 more stringent INDA GD4 test protocols which (1) decrease the slosh box test duration from 180 minutes to 60 minutes, (2) increase the slosh box text pass-through percentage requirement from 25% to 60%, and (3) decrease the municipal pump test average power increase over baseline from 15% to 5%.

21.   For avoidance of doubt, the distribution or sales by P&G of residual Product

manufactured prior to the implementation of the labeling changes described in paragraph 20; or the distribution or sales by third parties of residual Product manufactured prior to the implementation of the labeling changes described in paragraph 20, shall not constitute a violation of the injunction issued herein.

22.   All Valid Claims shall be paid according to the terms of and by the deadlines set forth in the Settlement Agreement.

23.   By operation of this Final Approval Order and Judgment, Plaintiffs on the one hand, and the Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Included Actions, based upon any violation of any state or federal statutory or common law or regulation, and any claim arising directly or indirectly out of, or in any way relating to, the claims that actually were, or could have been, asserted in the Included Actions, that Plaintiffs, on the one hand, and P&G, on the other hand, have had in the past, or now have, related in any manner to the Released Parties' products, services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiffs, on the one hand, and P&G, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise.

24.   By operation of this Final Approval Order and Judgment, Settlement Class Members shall have released and forever discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that were, or could have been, asserted in the Included Actions regarding (i) the flushability or (ii) the safety for sewer and septic of the Product and statements concerning the Product's (i) flushability or (ii) safety for

sewer and septic, except that there shall be no release of claims for personal injury or property damage allegedly caused by use of the Product, nor any release of claims for purchases made in New York.

25.   Plaintiffs and P&G shall, by operation of this Final Approval Order and Judgment, be deemed to have waived the provisions, rights and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law.  In addition, Settlement Class Members shall, by operation of this Final Approval Order and Judgment, be deemed to have waived the provisions, rights and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth in paragraph 15 of this Order. Section 1542 provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

26.   Nothing herein shall bar any action or claim to enforce the terms of the Settlement Agreement.

27.   No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever to any other Party.  Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, in any proceeding in any court, administrative agency, or other

tribunal.  P&G's agreement not to oppose the entry of this Final Approval Order and Judgment shall not be construed as an admission or concession by P&G that class certification was appropriate in the cases or would be appropriate in any other action.

28.   For the reasons stated ~~in the separate Order on Class Counsel's application for an award of attorneys' fees, costs, expenses and class representative payments~~, the following amounts shall be paid by P&G:

a. Fees, costs, and expenses to Class Counsel: $2,150,000.00

b. Class representative payments

    i.   to Plaintiff Jamie Pettit: $5,000.00

    ii.  to Plaintiff Karla Ramcharitar: $3,000.00

    iii.  to Plaintiff Gloria Wiltrakis: $3,000.00

    iv.  to Plaintiff Cheryl Senko: $3,000.00

    v.  to Plaintiff Debra Jewell: $1,000.00

    vi.  to Plaintiff Susan Hartzfel: $1,000.00

    vii.  to Plaintiff Kenneth Luke: $1,000.00

    viii.  to Plaintiff Linda Feiges: $1,000.00

    ix.  to Plaintiff Willie Perez: $1,000.00

    x.  to Plaintiff Dian Cotton: $1,000.00

    xi.  to Plaintiff Marlena Hinkle: $1,000.00

    xii.  to Plaintiff Phyllis Jones: $1,000.00

    xiii.  to Plaintiff Glen Katz: $1,000.00

    xiv.  to Plaintiff Eilene Shaffer: $1,000.00

    xv.  to Plaintiff Charles Tippe: $1,000.00

    xvi.  to Plaintiff Sandra Flores: $1,000.00

    xvii.  to Plaintiff Roxy Vance: $1,000.00

Such amounts shall be paid according to the terms of the Settlement Agreement.

29.   The Court also has reviewed this District's Procedural Guidance for Class Action Settlements, which were adopted after the settlement was reached but with which the parties have

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

nevertheless substantially complied. In particular, the Court finds that the information provided with respect to notice and the claims rate as well as the injunctive relief is sufficient to assure this Court that there has been no disproportional benefit to the attorneys. The Court further finds that Class Counsel has provided all the necessary information to support their fee award, including detailed declarations describing the work performed by the various attorneys and firms involved. Finally, the Class Representative Payments are supported by the fact that the plaintiffs were involved in the litigation and executed broader releases, including releases for personal property damage.

30.   In accordance with the District's Procedural Guidance for Class Action Settlements, the parties shall file a Post-Distribution Accounting report within 21 days of the distribution of the settlement funds and attorneys' fees, and not later than 120 days from the date of this order.

31.   This order shall constitute a final judgment binding the parties with respect to this case.

32.   Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction over the interpretation, implementation and enforcement of the Settlement Agreement.  In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions *ex ante*.

33.   Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.

**IT IS SO ORDERED** this 28th day of March, 2019.



17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Honorable Richard Seeborg
United States District Court Judge

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND JUDGMENT